SAN XAVIER DEVELOPMENT AUTHORITY, Plaintiff–Appellant,

v.

Susan CHARLES, a.k.a. Susan Charet d.b.a. Desert Sands Mobile Home Sales and Service, Defendant–Appellee.

No. 99–16158.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 31, 2000

Filed Jan. 29, 2001

Louis W. Barassi (argued), Tucson, Arizona, and Robert Moeller, Phoenix, Arizona, for the plaintiff-appellant.

Ned Garn (argued), Armand Salese, Salese & McCarthy, P.C., Tucson, Arizona, for the defendant-appellee.

Before: B. FLETCHER, O'SCANNLAIN, and GOULD, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

This case presents questions of standing to sue under the Nonintercourse and General Allotment Acts with respect to a leasehold in allotted land on an Indian Reservation in Arizona.

I

San Xavier Development Authority (the "Development Authority") is a non-profit corporation chartered by the Tohono O'odham Indian Nation, a federally-recognized Indian tribe. The Development Authority is the lessee of allotted Indian land which is now part of the San Xavier Industrial Park, located within Arizona's San Xavier Indian Reservation. The Development Authority and the allottee landowners executed a "Master Lease" on February 3, 1971, and the Bureau of Indian Affairs ("BIA") approved it on April 16, 1971.[1]

---

1. The various pleadings, cases, statutes, and regulations at issue on this appeal refer to the governmental entity authorized to approve conveyances as the Department of the Interi-

The parties amended the Master Lease on December 19, 1982, and the BIA approved the amendment on September 9, 1983. The amended Master Lease is the only conveyance that is part of the record on appeal; neither the original Master Lease, nor the sublease that is the subject of the instant litigation, is part of the record.

On November 1, 1985, the Development Authority subleased Lot 12 of the Industrial Park to Susan Charles, who operates the Desert Sands Mobile Home Sales and Service company on the property. The sublease was for a term of five years, with options for three additional terms of five years each. The BIA never approved this sublease.

On February 8, 1999, fourteen years after the execution of the sublease, the Development Authority filed a complaint in the District of Arizona seeking to terminate it. The complaint alleged that the sublease was invalid because it violated the Nonintercourse Act, 25 U.S.C. § 177; the General Allotment Act, 25 U.S.C. § 348; and the provision of Title 25 which authorizes leases of property within the San Xavier Indian Reservation, 25 U.S.C. § 416. The complaint also alleged that the sublease was invalid because the Master Lease required subleases to be approved by the BIA, and the BIA never provided its consent. In a May 5, 1999 order, the district court granted Charles's motion to dismiss the Development Authority's complaint for lack of standing and failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). The district court held that § 177 did not apply to the allotted land at issue in this case, and that the Development Authority, as a lessee of allotted land, did not have standing to bring claims under §§ 348 and 416. The district court also rejected the Development Authority's argument that the sublease was invalid because the Master Lease requires that the BIA approve subleases, holding that the Development

Authority could not invalidate the sublease based on its own failure to comply with its obligations as the allottee landowners' lessee.

The Development Authority filed this timely appeal.

## II

■ The district court held that the Development Authority could not present a claim pursuant to the Nonintercourse Act, 25 U.S.C. § 177, which states, in relevant part, that, "No purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution." 25 U.S.C. § 177. By its terms, this prohibition only applies to tribal land, which is land held in common for the benefit of all members of a tribe. It does not apply to allotted land, which is land once held in common, but now owned by individual Indians, and held in trust by the federal government. *Compare* Felix S. Cohen, Handbook of Federal Indian Law 253 (1982) (tribal land) *with id.* at 605–07 (allotted land). Every court which has addressed a claim brought under the Nonintercourse Act has discussed the Act in reference to tribal, and not allotted, land. For example, in *United States v. Dann*, we stated that, "The common view of aboriginal title is that it is held by tribes. Among the most important protections of aboriginal title were the Trade and Intercourse Acts, which invalidated transfers of title from tribes without the approval of the United States." 873 F.2d 1189, 1195 (9th Cir.1989) (citations omitted). *See also Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 56 (2d Cir.1994) ("To establish a prima facie case based on a violation of the [Nonintercourse] Act, a plaintiff must show that (1)

or, the Secretary (of the Department of the Interior), and the Bureau of Indian Affairs, which is part of the Department of the Interior. In the interests of simplicity and consistency, we refer to the government as the Bureau of Indian affairs ("BIA"), except when quoting from a statute.

it is an Indian tribe, (2) the land is tribal land. . . .").

■ The property subleased by the Development Authority to Charles is not tribal land, held in common by the members of the tribe. Instead, it is allotted land owned by individual landowners. The district court properly concluded that § 177 does not apply to this property and to this conveyance.

■ Furthermore, the district court properly dismissed the § 177 claim because the Development Authority, as a lessee of allotted land, does not have standing to bring an action under the Nonintercourse Act. Only Indian tribes may bring § 177 actions, and "individual Indians do not even have standing to contest a transfer of tribal lands on the ground that the transfer violated that statute." *Dann*, 873 F.2d at 1195. *See also Golden Hill*, 39 F.3d at 56; *Tonkawa Tribe of Okla. v. Richards*, 75 F.3d 1039, 1044 (5th Cir.1996) ("To establish a violation of the Nonintercourse Act . . . the Tribe must show that (1) it constitutes an Indian Tribe within the meaning of the Act . . ."); *Epps v. Andrus*, 611 F.2d 915, 918 (1st Cir.1979) (citations omitted) ("As the courts have stated repeatedly, claims on the part of individual Indians or their representatives are not cognizable in federal courts under the Indian Trade and Non–Intercourse Act. In short, since plaintiffs are not suing as a tribe, they do not have standing to

bring this claim; and because plaintiffs failed to allege tribal status when these conveyances of property were made, they have failed to state a claim upon which relief can be afforded under the Non–Intercourse Act.").

The Development Authority is not a tribe, and the land that it leased and then subleased to Charles is allotted, not tribal, land. The district court properly dismissed the § 177 claim.

### III

The Development Authority also asserted claims under the General Allotment Act, 25 U.S.C. § 348,[2] which regulates conveyances of allotted land, and 25 U.S.C. § 416, which specifically authorizes leases of land located within the San Xavier Indian Reservation.[3] Together, these two sections explicitly permit leases of property located within the San Xavier reservation, but state that for leases to be valid, they must be approved by the BIA.

The district court did not specifically state that it dismissed the claims under these sections for want of standing, but it is apparent from the order that the Development Authority's lack of standing under these sections was the basis for its order. The district court stated that, "The standing of an Indian tribe to challenge the validity of a contract does not confer a similar right on non-tribal litigants whom the federal statutes were not designed to

---

**2.** The General Allotment Act provides, in relevant part, that,

Upon the approval of the allotments provided for in this Act by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made . . . and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever . . . And if *any conveyance shall be made of the lands set apart and allotted as herein provided,*

*or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void . . .*
25 U.S.C. § 348 (emphasis added).

**3.** Section 416 provides, in relevant part, that,

Any trust or restricted Indian lands, whether tribally or individually owned, located on the San Xavier Indian Reservation and the Salt River Pima–Maricopa Indian Reservation, in the State of Arizona, may be leased by the Indian owners, with the approval of the Secretary of the Interior, for public, religious, educational, recreational, residential, business, farming, or grazing purposes. . . .
25 U.S.C. § 416.

protect," and it cited *Chuska Energy Company v. Mobil Exploration & Producing North America, Inc.,* 854 F.2d 727, 732 (5th Cir.1988). The district court also rejected the argument that the Development Authority could bring an action under § 416, because "[b]y its terms Section 416 applies to a lease of land executed by the Indian owner rather than the lessee."

■ As a lessee, and not an allottee landowner, the Development Authority's interest is not "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Serv. Orgs. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). As the district court noted, §§ 348 and 416 limit conveyances from Indian owners to potential purchasers or lessees. Section 348 places restrictions on alienation of property held "in trust for the sole use and benefit of the Indian to whom such allotment shall have been made." 25 U.S.C. § 348. Section 416 refers to property "leased by the Indian owners," but it is silent with respect to transactions in which the Indian owners are not parties. 25 U.S.C. § 416.

■ In rejecting the Development Authority's argument that it could bring an action under these sections, the district court properly analogized the Development Authority's claims to those dismissed by the Fifth Circuit in *Chuska.* There, the Chuska Energy Company brought an action under 25 U.S.C. § 396d, which requires BIA approval of mineral agreements entered into by the Navajo Nation or individual members of that tribe. 854 F.2d at 727. The Fifth Circuit held that the company did not have standing to present a § 396d claim, stating, "That the Navajos or the Secretary of Interior could have standing in federal court to challenge the assignment does not confer a similar right on non-tribal or non-governmental litigants who it was not designed to protect." *Id.* at 732. In the instant case, the district court properly cited *Chuska* for the principle that a non-Indian party to a contract does not have the right to employ statutory remedies enacted to protect Indian tribes and their members.

■ Similarly, the Development Authority cannot derive standing from the regulations under Title 25. Those regulations clearly require BIA approval of conveyances: "a sublease, assignment, amendment, or encumbrance of any lease or permit issued under this part may be made only with the approval of the Secretary and the written consent of all parties to such lease or permit." 25 C.F.R. § 162.12(a) (2000). But this regulation does not state that a sublease which did not receive BIA approval is void or voidable. Instead, the remedy for a violation of § 162.12(a) is found in 25 C.F.R. § 162.14, which provides in part that,

> Upon a showing satisfactory to the Secretary that there has been a violation of the lease or the regulations in this part, the lessee shall be served with written notice.... If within the ten-day period, it is determined that the breach may be corrected and the lessee agrees to take the necessary corrective measures, he will be given an opportunity to carry out such measures.... If the lessee fails within such reasonable time to correct the breach or to furnish satisfactory reasons why the lease should not be cancelled, the lessee shall forthwith be notified in writing of the cancellation of the lease.

25 C.F.R. § 162.14 (2000). This regulation provides a remedy for an allottee landowner (the lessor) against its lessee (here, the Development Authority), and that remedy is the cancellation of the lease between those parties (the Master Lease). In other words, § 162.14 protects a lessor whose lessee violates § 162.12 by subleasing the leasehold to a third party. The regulation does not provide a remedy for a lessee-sublessor; the Development Authority lacks standing to sue under the General Allotment Act.

## IV

The Development Authority also argues that it can sue to void the sublease in federal court because it is seeking to enforce its right to possess its interest in the property it leased from the allottee landowners, and that its leasehold is authorized and protected by the many federal statutes and regulations which govern Indian lands. But the fact that a property interest is regulated by, or was created by, federal law does not confer standing under otherwise inapplicable federal statutes on the holder of that interest.

In *Oneida Indian Nation of New York State v. County of Oneida, New York*, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974), the Supreme Court addressed a tribe's assertion of a right to possession of land ceded by the tribe to the federal government in 1795. In reversing the Second Circuit, which had affirmed the dismissal of the tribe's complaint, the Court distinguished claims to possession arising under federal law in the first instance (such as the Oneida Nation's claim) with the ejectment action presented in the earlier case of *Taylor v. Anderson*, 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218 (1914). The Court summarized *Taylor* as "more like those cases indicating that a 'controversy in respect of lands has never been regarded as presenting a Federal question merely because one of the parties to it has derived its title under an act of Congress.'" 414 U.S. at 676. The Court then explained that in that category of cases, "Once patent issues, the incidents of ownership are, for the most part, matters of local property law to be vindicated in local courts, and in such situations it is normally insufficient for 'arising under' jurisdiction merely to allege that ownership or possession is claimed is under a United States patent." 414 U.S. at 676–77, 94 S.Ct. 772. *Oneida* and *Taylor* stand for the principle that a plaintiff asserting a right to possession of allotted land cannot rest its right to relief (or its basis for federal jurisdiction) on the bare fact that one of the parties to it has derived its title

under an act of Congress authorizing leases of Indian owned-property, such as 25 U.S.C. § 416.

## V

Congress has enacted a comprehensive regulatory regime governing conveyances of property from both tribal and allottee landowners, but it has not provided comparable remedies for these landowner's lessees. As a lessee, the Development Authority does not have standing under §§ 177, 348, or 416, and the judgment of the District Court dismissing its complaint is

AFFIRMED.