# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 00-2468/2471

_____

| | | |
|---|---|---|
| Rosebud Sioux Tribe, a federally recognized Indian Tribe, | * * * | |
| Plaintiff-Appellant, | * * | |
| Sun Prairie, a Nebraska general partnership, | * * * | |
| Plaintiff-Appellee, | * * | |
| v. | * * | Appeal from the United States District Court for the |
| Neal A. McCaleb, Assistant Secretary - Indian Affairs, U.S. Department of Interior[1]; Gail A. Norton, Secretary of the Interior, U.S. Department of the Interior[2], | * * * * * * | District of South Dakota [TO BE PUBLISHED] |
| Defendants-Appellants, | * * | |
| Concerned Rosebud Area Citizens, a South Dakota non-profit corporation; South Dakota Peace and Justice Center, an unincorporated association; Prairie Hills Audubon Society, a South Dakota | * * * * * | |

_____

[1]Neal A. McCaleb has been appointed to serve as Assistant Secretary - Indian Affairs, and is substituted as defendant pursuant to Fed. R. App. P. 43(c).

[2]Gail A. Norton has been appointed to serve as Secretary of the Interior, and is substituted as defendant pursuant to Fed. R. App. P. 43(c).

non-profit corporation; Humane     *
Farming Association, a California     *
non-profit association,     *
    *
       Intervenors-Defendants-     *
       Appellants.     *

_____

Submitted:  February 26, 2001

Filed:   April 5, 2002 (Corrected: 04/19/02)

_____

Before WOLLMAN,[3] Chief Judge, HANSEN[4] and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

This case arises from the Rosebud Sioux Tribe's lease of land to Sun Prairie for construction of a pork production facility.  Because the lease covers land included within the Rosebud Indian Reservation, the Bureau of Indian Affairs (BIA) had to review and approve the lease.  Prior to approval, and because such constitutes federal action, the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-4370d, mandated preparation of an environmental impact statement (EIS) if the project would result in any significant environmental impact.  Accordingly, BIA engaged a contractor to prepare an Environmental Assessment (EA), to predict the likely environmental impact.  Based on the EA, BIA determined the project would cause no significant impact which would require the preparation of an EIS.  Thereafter, BIA

_____

[3]The Honorable Roger L. Wollman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002.  He has been succeeded by the Honorable David R. Hansen.

[4]The Honorable David R. Hansen became Chief Judge of the United States Court of Appeals for the Eighth Circuit on February 1, 2002.

issued a Finding of No Significant Impact (FONSI) and approved the lease, which the Tribe and Sun Prairie executed.

Almost five months later, the former Assistant Secretary for Indian Affairs at the Department of Interior, Kevin Gover (Assistant Secretary), voided the lease saying the FONSI was issued in violation of NEPA. Sun Prairie and the Tribe filed suit against Gover and requested a preliminary and permanent injunction. Several environmental and public interest groups (collectively, the Intervenors) intervened as defendants. The district court granted a preliminary injunction and, after a hearing, a permanent injunction. Rosebud Sioux Tribe v. Gover, 104 F. Supp. 2d 1194 (D.S.D. 2000). The defendants and the Tribe now appeal. Because we find Sun Prairie lacks standing to pursue its claims, we vacate the district court's order granting a permanent injunction, and remand with instructions to dismiss the complaint for lack of jurisdiction.

I.    BACKGROUND

In the spring of 1998, the Tribe and Sun Prairie agreed to negotiate a land lease for the development of a multi-site hog production facility on tribal trust land. The BIA office in South Dakota arranged for the preparation of a project EA which was finalized in August, 1998. Based upon the EA, the BIA Superintendent issued a FONSI and authorized the Tribe to sign the lease. The lease between the Tribe and Sun Prairie was executed on September 8, 1998, and approved by the Aberdeen Area Director for the BIA on September 16, 1998. Construction on the project began on or about September 21, 1998.

The project consists of two phases. Phase I consists of three finishing sites to be used to fatten hogs for market. Phase II consists of five sow sites and five additional finishing sites. As of the date of the hearing on Sun Prairie's application

for a preliminary injunction, the Tribe, to some extent, and Sun Prairie to a great extent, had expended approximately $5,000,000 on construction.

On November 23, 1998, the intervenors in this action sued the federal government in the United States District Court for the District of Columbia, seeking to suspend or enjoin BIA's approval of the lease. Concerned Rosebud Area Citizens v. Babbitt, 34 F. Supp. 2d 775 (D.D.C. 1999). On January 27, 1999, Assistant Secretary Gover sent a letter to the Tribe voiding the lease because the FONSI did not fully comply with NEPA. The parties to the D.C. litigation then entered into a joint stipulation of dismissal and the case was dismissed without prejudice.

The Tribe and Sun Prairie initiated the present action challenging the Assistant Secretary's authority and decision to void the lease. The district court issued a temporary restraining order on February 11, 1999, which was later extended. Eventually, the district court granted a permanent injunction restraining defendants from "taking any actions, other than seeking relief by appeal or other appropriate judicial relief, which actions would have the purpose or consequence of interfering or attempting to interfere with the construction or operation of the project that is the subject of this action." Rosebud Sioux Tribe, 104 F. Supp. 2d at 1213-14. The Government and Intervenors have appealed from the permanent injunction.

Subsequent to entry of the permanent injunction, the Tribe held general tribal elections and the composition of the tribal council changed. The reconstituted tribal council no longer favored the hog production project, and determined the Assistant Secretary's decision to void the lease should be upheld. The Tribe requested, and we granted, permission to realign itself as an appellant.

## II.    DISCUSSION

Sun Prairie claims the Assistant Secretary's decision to void the lease was taken in violation of (1) 25 U.S.C. §§ 1(a), 81 & 415; (2) NEPA, and its enabling regulations, 40 C.F.R. §§ 1500-1508; and (3) the National Historic Preservation Act (NHPA), 16 U.S.C. §§ 470-470x-6.  The Intervenors contend Sun Prairie lacks standing to assert these claims.  Specifically, the Intervenors argue the interests which Sun Prairie seeks to protect do not fall within the zone of interests intended to be protected or regulated by the statutes in question.  The Intervenors characterize Sun Prairie's interests as solely economic, while Sun Prairie characterizes its interests as economic and procedural.

"The question of standing 'involves . . . constitutional limitations on federal-court jurisdiction.'" Bennett v. Spear, 520 U.S. 154, 162 (1997) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)).  "To satisfy the case or controversy requirement of Article III, which is the irreducible constitutional minimum of standing, a plaintiff must, generally speaking, demonstrate that he has suffered injury in fact, that the injury is fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." Id.  (internal quotations omitted). The Intervenors concede Sun Prairie has satisfied the constitutionally-mandated elements of standing.

In addition to constitutional requirements, standing also involves prudential limits on the exercise of federal jurisdiction.  Bennett, 520 U.S. at 162.  Prudential limits require a plaintiff to show the grievance arguably falls within the zone of interests protected or regulated by the statutory provision invoked in the suit. Id.

Sun Prairie brought its suit under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, which provides for judicial review of federal agency action. Cent. S. D. Coop. Grazing Dist. v. Sec'y of the U.S. Dep't of Agric., 266 F.3d 889,

894 (8th Cir. 2001) (hereafter Grazing). The APA is a procedural statute and provides only the "framework for judicial review of agency action." Preferred Risk Mut. Ins. Co. v. United States, 86 F.3d 789, 792 (8th Cir. 1996) (citing Defenders of Wildlife v. Adm'r, EPA, 882 F.2d 1294, 1303 (8th Cir. 1989)). A suit brought under the APA must be based upon the violation of a separate statute whose violation forms the basis for the complaint. Preferred Risk Mut. Ins. Co., 86 F.3d at 792. Thus, in order to establish standing, a plaintiff seeking judicial review must also show the injury complained of falls within the zone of interests sought to be protected by the statutory provision. Bennett, 520 U.S. at 162-63.

> In cases where the plaintiff is not itself the subject of the contested regulatory action, the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.

Clarke v. Sec. Indus. Ass'n, 479 U.S. 388, 399 (1987).

"Whether a plaintiff's interest is arguably . . . protected . . . by the statute within the meaning of the zone-of-interests test is to be determined not by reference to the overall purpose of the Act in question . . . but by reference to the particular provision of law upon which the plaintiff relies." Bennett, 520 U.S. at 175-76 (internal quotations omitted). We therefore analyze, in turn, each of the statutory provisions upon which Sun Prairie relies.

A.    25 U.S.C. §§ 1(a), 81 & 415.

Sun Prairie first asserts standing under three statutes involving the relationship between Indian tribes and the federal government. 25 U.S.C. §§ 1(a), 81 & 415. Although Sun Prairie has interests which are threatened by the Assistant Secretary's actions, none fall within the zone of interests sought to be protected by §§ 1(a), 81

and 415. Section 1(a) merely allows the Secretary of the Interior to delegate certain powers and duties to the Commissioner of Indian Affairs to facilitate the administration of laws governing Indian affairs. 25 U.S.C. § 1(a). Sections 81 and 415 impose limitations on contracts and leases involving Indian lands, and are intended to protect only Native American interests. 25 U.S.C. §§ 81 & 415; see Schmit v. Int'l Finance Mgmt. Co., 980 F.2d 498, 498 (8th Cir. 1992) (holding § 81 was enacted solely for the benefit of Indians); W. Shoshone Bus. Council v. Babbitt, 1 F.3d 1052, 1056 (10th Cir. 1993) (holding § 81 protects Indians from improvident and unconscionable contracts); Webster v. United States, 823 F. Supp. 1544, 1550 (D. Mont. 1992) (holding § 415(a) insures Native American land transactions with third parties are advantageous), aff'd, 22 F.3d 221 (9th Cir. 1994); cf. San Xavier Dev. Auth. v. Charles, 237 F.3d 1149, 1152-53 (9th Cir. 2001) (holding § 416[5] confers no standing to non-tribal or non-government litigants).

In support of its standing argument, Sun Prairie cites Yavapai-Prescott Indian Tribe v. Watt, 707 F.2d 1072 (9th Cir. 1983). Sun Prairie contends Yavapai-Prescott recognized the right of a non-Indian lessee of Indian land to assert claims under § 415. But, Yavapai-Prescott does not support Sun Prairie's claim of standing under Title 25 of the United States Code. The case involved a tribe's attempt to terminate unilaterally a lease which had previously been approved by the Secretary of the Interior in accordance with § 415. Id. at 1074. The Ninth Circuit refused to recognize the right of the tribe to terminate a previously approved lease without the Secretary's consent. Id. at 1075. Though the non-Indian lessee was a party to the case, the court never addressed *his* claims or considered whether *he* had standing to assert those claims under § 415. Id. at 1074 n.4 (declining to reach and consider

---

[5]Section 416 authorizes leases of land located within the San Xavier Indian Reservation. Section 415 authorizes leases of land located within the Rosebud Sioux Indian Reservation, among others.

lessee's previously dismissed counterclaims, because the tribe had no authority to terminate the lease unilaterally).

It is apparent Sun Prairie garners no support for its position from the precedent of our sister circuit. In San Xavier, the Ninth Circuit expressly rejected a non-tribal litigant's claim of standing: "As a lessee, and not an allottee landowner, the Development Authority's interest is not 'arguably within the zone of interests to be protected or regulated by the statute . . . in question.'" 237 F.3d at 1153 (quoting Ass'n of Data Processing Serv. Orgs. v. Camp, 397 U.S. 150, 153 (1970)). "A non-Indian party to a contract does not have the right to employ statutory remedies enacted to protect Indian tribes and their members." Id. (citing Chuska Energy Co. v. Mobil Exploration & Producing N. Am., Inc., 854 F.2d 727, 732 (5th Cir. 1988) (holding a lessee's interest is not arguably within the zone of interests to be protected or regulated by 25 U.S.C. § 416)).

Because the statutes relied upon by Sun Prairie were enacted to protect Indian interests, we believe it would be inconsistent to interpret them as giving legally enforceable rights to non-tribal or non-governmental parties whose interests conflict with the tribes' interests. Sun Prairie's asserted interests, while considerable, are not arguably within the zone of interests to be protected or regulated by the Indian statutes. Therefore, Sun Prairie has no standing to proceed under Title 25 of the United States Code.

B.    NEPA

Sun Prairie next asserts standing under NEPA. The Intervenors argue Sun Prairie lacks standing under NEPA because the interests it seeks to protect are solely economic. We agree.

NEPA establishes a "broad national commitment to protecting and promoting environmental quality." Grazing, 266 F.3d at 895 (quoting Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 348 (1989)). "The purpose of NEPA is to protect the environment, not the economic interests of those adversely affected by agency decisions." Nev. Land Action Ass'n v. U.S. Forest Serv., 8 F.3d 713, 716 (9th Cir. 1993). Organizations with genuine environmental interests are proper parties to represent the public's environmental interests and challenge agency action. Churchill Truck Lines, Inc. v. United States, 533 F.2d 411, 416 (8th Cir. 1976). Parties motivated in part by protection of their own economic interests may also challenge agency action as long as their environmental interests are not so insignificant that they should be disregarded altogether. Robinson v. Knebel, 550 F.2d 422, 425 (8th Cir. 1977). But parties motivated solely by "their own economic self-interest and welfare, are singularly inappropriate parties to be entrusted with the responsibility of asserting the public's environmental interest. . . ." Churchill, 533 F.2d at 416.

The overriding purpose of NEPA is to prevent or eliminate damage to the environment. But even purely economic interests may confer standing under NEPA if the particular NEPA provision giving rise to the plaintiff's suit evinces a concern for economic considerations. See Friends of the Boundary Waters Wilderness v. Dombeck, 164 F.3d 1115, 1125-26 (8th Cir. 1999) (citing provisions of NEPA requiring consideration of social and economic effects of agency action); Grazing, 266 F.3d at 895-96 (same). NEPA standing jurisprudence "requires us to closely scrutinize the asserted basis for standing." Grazing, 266 F.3d at 895. We must determine whether the asserted interest "is arguably protected by [NEPA] under the zone-of-interests test . . . *by reference to the particular provision of law upon which the plaintiff relies, and not by reference to the overall purpose of the act in question*." Id. at 896 (citing Bennett, 520 U.S. at 175-76) (emphasis supplied).

Sun Prairie fails to cite in its complaint or other filings any particular provision of NEPA upon which it relies to protect its economic interests. Instead, it refers broadly to NEPA, relying on <u>Dombeck</u> and <u>Robinson</u> to argue that plaintiffs motivated by economic interests have standing under NEPA. 164 F.3d at 1127; 550 F.2d at 425. <u>Dombeck</u> and <u>Robinson</u> are, however, inapposite. In <u>Dombeck</u>, the plaintiffs relied upon particular provisions of NEPA which required the agency to take economic interests into consideration when preparing an EIS. 164 F.3d at 1125-26. In this case, no EIS was ever prepared. Thus, the provisions requiring an EIS to consider economic impact are not in play. Sun Prairie's reliance upon <u>Robinson</u> is equally misplaced. The <u>Robinson</u> plaintiffs, in addition to citing economic interests, claimed that agency action would impede their use of the affected land for hunting and fishing. 550 F.2d at 425. Though motivated in part by economic interests, their environmental concerns were sufficient to establish standing. <u>Id.</u>

We believe the outcome in this case is controlled by our very recent holding in <u>Grazing</u>, in which a corporation composed of individual ranchers sought review under NEPA of an agency decision reducing the number of acres available for grazing in the Fort Pierre National Grasslands. 266 F.3d at 892. The plaintiff claimed solely an economic injury, and asserted standing based upon the following NEPA provisions: 42 U.S.C. §§ 4332(2)(C), 4331(a) and 4332(2)(E). We rejected the plaintiff's standing argument. We held that although § 4332(2)(C) requires consideration of economic interests, the provision only applies when an EIS is prepared. In that case, because a FONSI was issued, no EIS was prepared. We also rejected the plaintiff's claim of standing based upon § 4332(2)(E). "Section 4332(2)(E) [requires] federal agencies to consider environmentally sound alternatives to proposed actions without reference to the human environment and, thus, to economic interests." <u>Id.</u> at 896. Finally, we held § 4331(a) was merely a broad policy statement, and did not provide a basis for plaintiff's standing. "Regardless of that overall broad policy, we must look to the specific provision under which the Grazing

District raised its NEPA claim." Id. (citing Bennett, 520 U.S. at 175). Like Grazing, this case involves the preparation of an EA and issuance of a FONSI. No EIS was prepared. Consequently, Sun Prairie's economic interests were never considered and do not fall within NEPA's zone of interests.

Our efforts to determine whether Sun Prairie has standing to assert its NEPA claim are hampered by its failure to reference the particular provisions of NEPA upon which it relies. Our review of NEPA has failed to uncover any provisions, aside from those governing preparation of an EIS, which would support a claim motivated by purely economic interests. Further, Sun Prairie has not asserted any environmental interest which would otherwise bring its claim within NEPA's zone of interests. Therefore, Sun Prairie does not have standing to bring its claim under NEPA.

C.    NHPA

Sun Prairie also claims standing under NHPA. NHPA was enacted to "encourage the public and private preservation and utilization of all usable elements of the Nation's historic built environment." 16 U.S.C. § 470-1(5). Congress believed "the historical and cultural foundations of the Nation should be preserved as a living part of our community life and development in order to give a sense of orientation to the American people." 16 U.S.C. § 470(b)(2). Sun Prairie makes no attempt to demonstrate how its economic interests fall within the zone of interests protected or regulated by NHPA. Nor does Sun Prairie even attempt to show how the agency action implicates NHPA. Indeed, the record reflects the Assistant Secretary's decision to void the lease was based upon a failure to comply with the mandates of NEPA, not NHPA. Because we are unable to divine any basis for standing under NHPA, Sun Prairie's NHPA claim is rejected.

D.     Procedural Interest/Injury.

In addition to economic loss, Sun Prairie argues it sustained injury to its procedural interest because the Assistant Secretary did not follow correct procedures when he reconsidered the earlier agency decision and voided the lease. Sun Prairie contends its procedural injury satisfies the requirements of prudential standing because its procedural interest falls within the zone of interests sought to be protected by Title 25 of the United States Code, NEPA and NHPA.

Injury to a procedural interest may satisfy the constitutional requirements of standing. Lujan v. Defenders of Wildlife, 504 U.S. 553, 571-73 n.7 (1992). "The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy." Id. We assume, without deciding, that Sun Prairie has established procedural standing. Procedural standing, however, only affects the showing a plaintiff must make to establish the elements of constitutional standing. Id. While procedural standing can substitute for constitutional standing, it does nothing to satisfy prudential standing. Thus, Sun Prairie must still show that its concrete interests, which underlie the procedural right, fall within the zone of interests the statutes are designed to protect. Douglas County v. Babbitt, 48 F.3d 1495, 1500 (9th Cir. 1995). As we have already determined above, Sun Prairie's economic interests, while considerable, do not fall within the zone of interests intended to be protected by the statutes upon which it relies. Accordingly, its allegation of procedural injury does not provide the necessary basis to establish prudential standing.

III.    CONCLUSION

The order of the district court granting a permanent injunction is vacated.  The case is remanded to the district court with instructions to dismiss the complaint for lack of jurisdiction.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.