## ONE THOUSAND FRIENDS OF IOWA, et al., Plaintiffs,

v.

## Norman Y. MINETA, et al., Defendants.

No. Civ. 4–02–CV–10168.

United States District Court, S.D. Iowa, Central Division.

Nov. 22, 2002.

Deborah M. Tharnish, William J. Koehn, Sharon K. Malheiro, Davis Brown Koehn Shors & Roberts PC, Des Moines, IA, John Britton, Schnader Harrison Segal & Lewis LLP, Washington, DC, for Plaintiffs.

Maureen McGuire, United States Attorney Des Moines, IA, Savid A. Ferree, Mark Hunacek, Iowa Attorney General, General Counsel Div–DOT, Ames, IA, Edward W. Remsburg, Ahlers & Cooney PC, Des Moines, IA, for Defendants.

## ORDER

LONGSTAFF, Chief Judge.

THE COURT HAS BEFORE IT the City of West Des Moines' motion to dismiss, filed April 29, 2002. The state defendants filed a similar motion to dismiss on April 30, 2002, and the federal defendants filed a motion to dismiss on May 23, 2002. All motions have been resisted, and are fully submitted.

## I. BACKGROUND AND GOVERNING LAW

This is the second of two federal actions filed by plaintiffs to halt federal, state and local efforts to improve the roadways and infrastructure supporting the Jordan Creek Town Center, a super-regional shopping center proposed to be developed in West Des Moines. Specifically, plaintiffs challenge improvements currently in progress on two major interchanges on

Interstate 80 ("I–80") and Interstate 35 ("I–35") in West Des Moines, Iowa. Count one of plaintiffs' complaint alleges defendants failed to adhere to the provisions of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.* As a basis for subject matter jurisdiction, plaintiffs allege that the Federal Highway Administration's ("FHWA") issuance of a Finding of No Significant Impact ("FONSI") with regard to the roadway improvements was both arbitrary and capricious, in violation of the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 *et seq.* Count two of plaintiffs' complaint alleges the City of West Des Moines violated plaintiffs' property and due process rights under the Fourteenth Amendment by expending public money for private purposes.

The factual background and applicable law pertaining to this matter have been thoroughly outlined in previous Orders from this Court, and will be incorporated in the body of this Order only as needed for resolution of a particular issue.

## II. DISCUSSION

### A. Whether Plaintiffs Merle Hay Mall, Valley West DM and King Irving Park Neighborhood Association must be Dismissed from Count I for lack of Standing

 All three groups of moving defendants allege that certain plaintiffs lack standing to bring the claims raised in the present litigation. The issue of standing involves both constitutional and prudential aspects. To satisfy the constitutional threshold, a plaintiff must show: 1) it suffered an injury to a legally protected interest; 2) the injury was caused by the illegal actions of the defendant; and 3) the injury will be redressed by a favorable judicial decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In addition to the constitutional prerequisites, the United States Supreme Court has adopted several "prudential restraints" on standing. Among these court-fashioned limitations is the requirement that a plaintiff's injuries fall within the zone of interests the statute at issue was designed to protect. *See, e.g., Bennett v. Spear,* 520 U.S. 154, 163, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). In addition, the Supreme Court generally has held that a party must assert its own rights, rather than resting on the rights of others. *See Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

#### 1. Merle Hay Mall

The complaint alleges the following facts relevant to this particular plaintiff:

Merle Hay Mall is an Iowa Limited Partnership and owns and operates Merle Hay Mall, located in the cities of Des Moines and Urbandale, approximately seven (7) miles from the proposed interchange projects, within the eight (8) mile "service area" for a "regional commercial area" recognized by the West Des Moines Comprehensive Plan, and in the same geographic and demographic market as General Growth's Town Center. Merle Hay Mall is located well within the anticipated region to be impacted by the proposed interchanges and the developments they induce, as well as within the same federal Air Quality Control Region. Merle Hay Mall is also served by the same MPO under 23 U.S.C. § 134, the Des Moines Metropolitan Planning Organization. Approximately 3,000 people (depending on the season) are employed at Merle Hay Mall, most of whom reside in the greater Des Moines region, including West Des Moines and points south and west, and many of whom use I–35 and I–80 to travel to work. The health, safety and comfort of Merle Hay Mall's employees, and the related organizational and financial in-

terests of Merle Hay Mall, are directly and adversely affected by the increased roadway safety risks associated with the enormous increase in vehicular traffic on I–35 and I–80 that will result from the interchange projects and the massive development it will spawn, and by the adverse environmental impacts, including air and noise pollution, that will result from the proposed interchanges and the failure of the defendants to comply with NEPA. The value of the limited partnership's interest in its mall will be diminished by the unfair advantage provided to a competitor retail mall, Town Center, as a result of West Des Moines' public expenditures for the private purposes of General Growth.

Complaint, at ¶ 17. Viewing the complaint liberally, Merle Hay Mall alleges the following injuries as a result of defendants' conduct: 1) "adverse affects" on the health, safety and comfort of its employees; and 2) a diminution in value of the limited partnership's interest in its mall. As explained below, neither of these asserted injuries vests Merle Hay Mall with standing to bring the present action.

a. Alleged Injury to Employees

Assuming arguendo the constitutional elements have been satisfied on the basis of potential injuries to its employees, Merle Hay Mall must nevertheless overcome the prudential hurdle that prohibits a plaintiff from basing a claim on the rights of others. *Warth*, 422 U.S. at 499, 95 S.Ct. 2197. Admittedly, the Supreme Court has allowed a third-party to seek redress for another's injuries in limited situations, when the following criteria are established: 1) the individual or entity seeking to assert the third party's rights has otherwise suffered an injury-in-fact; 2) the plaintiff and the third party's relationship is such that the plaintiff is nearly as effective a proponent of the third party's rights as that party himself or itself; and 3) an obstacle

exists to the third party asserting his or its own right. *Singleton v. Wulff*, 428 U.S. 106, 113–16, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). The second and third criteria are not satisfied in the present case. With regard to the second criterion, at least one Circuit Court of Appeal has held that an employer/employee relationship does not reflect the strong "identity of interests" necessary to ensure the employer will be a strong proponent of the employees' interests. *Region 8 Forest Service Timber Purchasers Council v. Alcock*, 993 F.2d 800, 809 (11th Cir.1993). Rather, the relationships that confer third-party standing are those in which the plaintiff has a personal or legal responsibility to protect the interests of the third-party, such as foster parents, *see Smith v. Organization of Foster Families for Equality & Reform*, 431 U.S. 816, 840–42, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) (foster parents had standing to assert rights belonging to children) or physicians, *see Griswold v. Connecticut*, 381 U.S. 479, 481, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (physician could assert rights on behalf of patients). In the present case, there is no allegation or evidence Merle Hay Mall has a personal or legal responsibility to protect the interests of its employees.

Even if Merle Hay Mall's status as an employer were sufficient to establish the second element, however, Merle Hay has failed to allege an obstacle to its employees protecting their own health, safety and comfort. *See Smith*, 431 U.S. at 841 n. 44, 97 S.Ct. 2094 (children generally lack capacity to protect interests in litigation, and are appropriately represented by foster parents or guardians). Under *Singleton*, therefore, the Court finds Merle Hay Mall lacks third-party standing to sue on the basis of alleged injury to its employees' health, safety and comfort.

In lieu of the *Singleton* test, plaintiffs urge the Court to follow the

three-part test for associational standing set forth by the United States Supreme Court in *Hunt v. Washington State Apple Advertising Com.*, 432 U.S. 333, 342–43, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Under this test, an association has standing to sue on behalf of its individual members if: 1) its members would have standing to sue in their own right; 2) the interests the association seeks to protect are "germane" to the organization's purpose; and 3) neither the particular claim alleged nor the relief requested requires that the individual members participate in the litigation. Plaintiffs contend that because Merle Hay Mall necessarily desires to ensure that its employees can travel to and from the workplace in a safe, healthy and convenient manner, its conduct in pursuing the present environmental litigation is "germane" to the successful operation of its business. *See, e.g., Overseas Shipholding*

*Group, Inc. v. Skinner,* 767 F.Supp. 287, 292 (D.D.C.1991) ("While environmental concerns are not the guiding purpose of the corporate organization, the goal of preserving a safe working environment . . . is certainly pertinent, if not necessary to [the corporation's] successful operation.").

With due respect to the district court's opinion in *Overseas Shipholding Group,* the Supreme Court's decision in *Hunt* makes clear that "associational standing" is generally limited to voluntary membership organizations and/or typical trade associations organized to represent a particular group of individuals. *Hunt,* 432 U.S. at 342–43, 97 S.Ct. 2434. Merle Hay Mall does not fit within either of these classifications. Accordingly, the Court declines to follow *Overseas Shipholding,* and holds Merle Hay Mall does not have standing to bring the present action on the basis of alleged injuries to its employees.[1]

---

1. The Court notes the associational test for standing also recently was considered by the federal district court in *Taubman Realty Group Ltd. Partnership v. Mineta,* 198 F.Supp.2d 744, 758 (E.D.Va.). Significantly, the plaintiff shopping center developer, TRG, in *Taubman* was represented by the same lead counsel representing plaintiffs in the present case, and raised virtually identical arguments with regard to standing. In finding that the plaintiff developer failed to meet the second prong of the associational standing test, that the interests at stake were germane to the group's purpose, the court reasoned:

TRG owns and operates a shopping center. TRG is not a citizens group or an association with a demonstrable interest in, or commitment to, environmental or traffic-related causes or concerns. In fact, through the operation of Regency, TRG (and, by virtue of its corporate parentage, Taubman) precipitates some of the very environmental and traffic-related impacts on which it seeks to fasten its standing in this very environmental and traffic-related impacts on which is seeks to fasten its standing in this action. TRG has made no showing that environmental, traffic, or general safety interests are "germane" to its organi-

zational purposes in any judicially cognizable manner. It is the burden of TRG to make that showing and its failure to satisfy that burden is fatal to its position on standing.

*Id.* In reaching its holding, the *Taubman* court expressly distinguished the *Overseas Shipholding* case by explaining:

Indeed, the only decision remotely related to the argument that TRG has proffered in support of its concept of standing is *Overseas Shipholding Group, Inc. v. Skinner,* 767 F.Supp. 287 (D.D.C.1991), wherein a corporate shipbuilding group brought a NEPA challenge to a rule that the Department of Transportation and the Maritime Administration had enacted. The plaintiff challenged the rule, in part, on the ground that, by operation thereof, the air and water environment in which its ships, crews, and other employees operated would be made more hazardous and polluted. . . . *Overseas Shipholding* is inapposite here. As the Federal Defendants properly have recognized, the business owner in *Overseas Shipholding* was permitted to assert its employees' interests in safe and healthy waterways because those waterways were the employees' direct working environment. In contrast, the plaintiffs in this case seek to assert the

**b. Loss in Value to Limited Partnership**

■ Plaintiffs allege alternatively that Merle Hay Mall has standing due to the loss in value of its interest in the Mall as a result of an "unfair competitive advantage" given to the proposed Jordan Creek Town Center. Complaint at ¶ 17. Again, however, one of the main prudential limitations on standing is the requirement that the interest sought to be protected is arguably within the zone of interests the statute was designed to protect. *Bennett,* 520 U.S. at 162–63, 117 S.Ct. 1154. At least two Circuit Courts of Appeal, including the Eighth Circuit, have held that economic interests of those adversely affected by agency decisions generally are not within the zone of interests intended to be protected by NEPA. *See, e.g., Rosebud Sioux Tribe v. McDivitt,* 286 F.3d 1031, 1038 (8th Cir. 2002) (" 'The purpose of NEPA is to protect the environment, not the economic interests of those adversely affected by agency decisions.' ") (quoting *Nevada Land Action Ass'n v. United States Forest Service,* 8 F.3d 713, 716 (9th Cir.1993)); *see also Churchill Truck Lines, Inc. v. United States,* 533 F.2d 411, 416 (8th Cir. 1976) (parties motivated solely by "their

own economic self-interest and welfare, are singularly inappropriate parties to be entrusted with the responsibility of asserting the public's environmental interest").

In *Rosebud Sioux Tribe,* the Eighth Circuit recognized an exception to this general rule "if the particular NEPA provision giving rise to the plaintiff's suit evinces a concern for economic considerations." *Rosebud Sioux Tribe,* 286 F.3d at 1038. Plaintiffs claim that the statutory introduction to NEPA, outlining Congress' recognition of "the profound impact of man's activity on the interrelations of all components of the natural environment, particularly ... industrial expansion [and] resource exploitation, reflects such a concern." This Court disagrees, noting that *Rosebud Sioux Tribe* specifically rejected a similar reliance on NEPA's general purpose statement:

> NEPA standing jurisprudence requires us to closely scrutinize the asserted basis for standing. We must determine whether the asserted interest is arguably protected by NEPA under the zone-of-interests test ... *by reference to the particular provision of law upon which the plaintiff relies, and not by*

interests of employees (most of whom are not their own) in commuting to and from work on public roads, upon which thousands of non-employee citizens travel every day. Those circumstances are far removed from the situation before the court in *Overseas Shipholding;* and, as counsel for TRG has acknowledged, no court has stretched the concept of associational standing to the point to which it must be taken to confer standing on TRG or Taubman. To permit the plaintiffs to sue based upon the type of injuries to employees that are alleged in the Amended Complaint would necessitate a substantial leap in logic, and an unprecedented expansion in the doctrine of standing, that the Court is not prepared to make. *Id.* at 758–59.

Even assuming the associational test is appropriately applied to plaintiffs Merle Hay

and Valley West Malls, as in *Taubman,* neither plaintiff has made any showing that "environmental, traffic, or general safety interests are 'germane' to its organizational purposes." *Id.; see also Central S.D. Coop. Grazing Dist. v. Sec'y of the United States Dep't of Ag.,* 266 F.3d 889, 894 (8th Cir.2001) (corporation of individual ranchers organized to operate and manage grazing land on cooperative basis lacked associational standing to bring NEPA claim on behalf of members because environmental concerns not germane to corporation's purpose). One need only look to the tremendous traffic jams caused in and around Valley West (and Merle Hay) Malls during the holiday season-often causing complete standstills on the nearby freeway exit ramps-to ascertain that safe, unpolluted roadways are not a top priority.

*reference to the overall purpose of the act in question.*

*Id.* (emphasis in orig.) (internal citations omitted). Because Merle Hay Mall is unable to establish standing either on the basis of its employees' interests or anticipated economic harm, the Court finds plaintiff Merle Hay Mall is appropriately dismissed from the present litigation.[2]

### 2. Valley West DM

■ With regard to plaintiff Valley West DM, plaintiffs' complaint alleges as follows:

Valley West DM, is an Iowa limited partnership and the owner and operator of Valley West Shopping Mall ("Valley West") in West Des Moines, Iowa, approximately three (3) miles from the proposed expanded interchange on 74th Street and I–80, and less than (2) miles from the proposed new interchange at I–35 and George M. Mills Civic Parkway. Valley West is one of the largest employers and is the largest property tax payer in West Des Moines. Valley West DM will be harmed by the use and contribution of proceeds generated by the sale of bonds by West Des Moines for the use by and/or benefit of the developers of the Town Center at Jordan Creek in making roadway improvements to 74th Street, Civic Parkway and EP True Parkway and the proposed interchanges. The value of the limited partnership's interest in its mall will be diminished by the unfair advantage provided to a competitor retail mall, Town Center, as a result of West Des Moines' public expenditures for the private purposes of General Growth.

Complaint, at ¶ 18. Other than Valley West's potential harm as a West Des Moines taxpayer from the alleged sale of

bonds to further the Town Center development, Valley West's stated injuries are indistinguishable from the economic injuries asserted by Merle Hay Mall. Accordingly, for the reasons outlined in part II(A)(1)(b) above, this Court finds plaintiff Valley West Mall is appropriately dismissed as a plaintiff in the present action.

### 3. King Irving Park Neighborhood Association

■ All three groups of defendants also assert that King Irving Park Neighborhood Association lacks standing to bring the present action. This association is defined in the complaint as:

a non-profit resident's organization that represents the residents of the King Irving Park neighborhood in Des Moines, Iowa. The Association includes low income, moderate income, and minority persons who will be adversely affected by the proposed roadway changes and the failure of the defendants to assess the environmental justice impact to their community.

Complaint at ¶ 11. Other than undescribed "adverse affects" caused by the proposed roadway changes, the only harm alleged to have been caused King Irving Park Neighborhood Association is the "failure of the defendants to assess the environmental justice impact to their community." *Id.*

These allegations fail to meet either the constitutional or prudential requirements of standing. With regard to the constitutional test, the Court previously has held that any obligation of FHWA to consider environmental justice is not judicially enforceable. *See* June 7, 2002 Order at 10–11; *see also Citizens Concerned About Jet Noise, Inc. v. Dalton,* 48 F.Supp.2d 582,

---

**2.** Merle Hay Mall also notes its geographical proximity to the interchange projects, as well as its location within the same federal Air

Quality Control Region. These facts alone do not establish an actual or threatened injury necessary to establish constitutional standing.

604 (E.D.Va.1999) (concluding court lacked jurisdiction to review environmental justice portion of EIS completed by Navy). Clearly, then, any failure on the part of FHWA to consider environmental justice would not be redressed in a favorable judicial decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. at 560, 112 S.Ct. 2130 (third requirement of constitutional standing is that alleged injury would be remedied by favorable judicial decision).

 For similar reasons, it also follows that King Irving Park Neighborhood Association fails to meet the prudential requirement that a plaintiff show its injuries fall within the zone of interests the statute at issue was designed to protect. *Bennett v. Spear,* 520 U.S. at 163, 117 S.Ct. 1154. The fact numerous courts have held that an agency's failure to expressly consider environmental justice does not create an independent basis for federal review forecloses any argument the statute was designed to protect socioeconomic interests. *See, e.g., Sur Contra La Contaminacion v. E.P.A.,* 202 F.3d 443, 449 (1st Cir.2000) (agency's alleged noncompliance with Executive Order on Environmental Justice not appropriate for judicial review); *Morongo Band of Mission Indians v. FAA,* 161 F.3d 569, 575 (9th Cir.1998); *Air Trans. Ass'n of Am. v. FAA,* 169 F.3d 1, 8–9 (D.C.Cir.1999); *see also* 40 C.F.R. § 1508.14 ("[E]conomic or social effects are not intended by themselves to require preparation of an environmental impact statement."). To the extent King Irving Park Neighborhood Association asserts an "adverse impact" as a result of the interchange improvements, such a generalized injury should be considered by the legislative, rather than judicial branch. *Valley*

*Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) ("[E]ven when the plaintiff has alleged redressable injury sufficient to meet the requirements of Art. III, the Court has refrained from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches.") (internal citation omitted). Because it fails to meet either the constitutional or prudential requirements for standing, King Irving Park Neighborhood Association is appropriately dismissed from the present litigation.

B. Whether This Court has Subject Matter Jurisdiction over Count I under the All Writs Act and the Declaratory Judgment Act[3]

Paragraph 29 of plaintiffs' complaint asserts that this Court has jurisdiction under four separate statutory schemes: 28 U.S.C. § 1331, conferring "federal question" jurisdiction; 28 U.S.C. § 1651, the All Writs Act; 5 U.S.C. §§ 701–706, the Administrative Procedures Act ("APA"); and 28 U.S.C. §§ 2201–2202–as well as the Fourteenth Amendment of the Constitution of the United States. Complaint, at ¶ 29. In its September 20, 2002 Order dismissing plaintiffs' pre-FONSI action, this Court previously found that neither the federal question statute, the All Writs Act, or the Declaratory Judgment Act supported this Court's exercise of judicial review over plaintiffs' claims. *See Thousand Friends of Iowa v. Iowa DOT,* 257 F.Supp.2d 1204 (S.D.Iowa 2002) (hereinafter, "September 20, 2002 Order"). The

---

**3.** None of the three groups of defendants seriously questions this Court's jurisdiction to

review an alleged federal due process violation under Count II of plaintiffs' complaint.

majority of the Court's analysis carries through to the present litigation.

■ Count I of plaintiffs' complaint alleges violations of NEPA and the Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq.* Complaint at 27. As held in the September 20, 2002 Order, neither § 1331 nor the Declaratory Judgment Act provides an independent cause of action. *See, e.g., Sabhari v. Reno,* 197 F.3d 938, 943 (8th Cir.1999) (section 1331 does not create substantive rights); *Anderson v. Sullivan,* 959 F.2d 690, 693 n. 4 (8th Cir.1992) (Declaratory Judgment Act "presupposes an independent form of jurisdiction ... [and] does not expand the jurisdiction of the federal courts").[4] Accordingly, because NEPA itself does not create a private cause of action, courts, including the United States Supreme Court, have held that challenges to alleged violations of NEPA must be brought pursuant to the APA. *See, e.g., Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 882, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Central S.D. Coop. Grazing Dist.,* 266 F.3d at 894; *Sierra Club v. Slater,* 120 F.3d 623, 630 (6th Cir.1997).

■ In their resistance memorandum, plaintiffs continue to assert that this Court may nevertheless assume jurisdiction pursuant to the All Writs Act, despite the fact the FONSI already has been entered. *See, e.g., V.N.A. of Greater Tift County, Inc. v. Heckler,* 711 F.2d 1020, 1027 (11th Cir.1983) ("It is firmly established that the [All Writs Act] encompasses the traditional power of the courts to enter a stay of enforcement of an agency decision *already entered,* pending review in the court issuing the injunction, 'to prevent irreparable injury ... resulting from the premature enforcement' of an agency decision.") (quoting *Scripps–Howard Radio, Inc. v. FCC,* 316 U.S. 4, 9, 62 S.Ct. 875, 86 L.Ed. 1229 (1942)). Because plaintiffs' NEPA-based claim is now ripe for APA review, however, there remains no impairment to this Court's immediate exercise of jurisdiction. Accordingly, there is no need to resort to the "extraordinary measures" contemplated under the All Writs Act. *ITT Community Development Corp. v. Barton,* 569 F.2d 1351, 1359 (5th Cir.1978) ("[I]f a court is able to effect a full and complete resolution of the issues before it without resorting to the extraordinary measures contemplated under the [All Writs] Act, then such measures cannot be employed.").

In summary, it is clear from the applicable statutory and caselaw that Congress intended alleged NEPA violations to be pursued within the confines of the APA. In fact, as noted by the City of West Des Moines, the APA itself includes a provision on which plaintiffs could have relied in their attempts to preserve the status quo. *See* 5 U.S.C. § 705. This section provides:

> When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

*Id.* Because a remedy existed under the APA for immediate relief, and because plaintiffs have failed to identify any prejudice that will result to them if their claim is reviewed solely pursuant to the APA, the Court finds Count I of plaintiffs' complaint is appropriately limited to a claim for judicial review of agency action under the APA.

---

**4.** Plaintiffs do not resist defendants' motions with regard to these two particular statutes.

### C. Whether Count II Should be Dismissed

#### 1. State and Federal Defendants

Count II of plaintiffs' complaint alleges the City of West Des Moines' conduct violated their Fourteenth Amendment rights by inappropriately using public monies "to benefit the private purposes of General Growth." Complaint at ¶ 85.[5] For the sake of clarity, the state and federal defendants have formally moved to dismiss this count as against them, noting the factual allegations set forth under this count pertain almost exclusively to the City of West Des Moines.[6] Plaintiffs do not appear to resist the state or federal defendants' motions. Accordingly, count II is dismissed as against the state and federal defendants.

#### 2. City of West Des Moines

 The City of West Des Moines also moves to dismiss count II as against it on the basis that plaintiffs are unable to establish that the City deprived plaintiffs of a constitutionally protected property interest. As noted by the City, in order to succeed on their substantive due process claim, plaintiffs must first establish they have been "deprived of a liberty or property interest." *Klein v. McGowan*, 36 F.Supp.2d 885, 891 (D.Minn.1999). In its June 7, 2002 Order denying plaintiffs' motion for a temporary restraining order, this Court previously held that any decrease in property values is speculative at best, and not yet ripe for review. "Although plaintiffs *may* see decreased property values due to their proximity to the mall itself,

the fact the EA concluded there was no significant environmental impact suggests the possibility of a reduction in value caused by *environmental concerns* is relatively low." June 7, 2002 Order at 12; *see also American Canoe Ass'n Inc. v. E.P.A.*, 289 F.3d 509, 511 (8th Cir.2002) (nonprofit farmers' association's challenge to EPA's approval of State's Clean Water Act's listing of pollution-impaired waters not ripe based on fact any harm to property values speculative at best).

Even assuming plaintiffs could establish they have been deprived of a protected property interest, however, they must also prove that the City's conduct with regard to the EA was so "arbitrary and oppressive that it shocked the conscience." *Furnas County Farms v. Hayes County*, No. 8:00CV548, 2002 WL 1796511 at *2 (D.Neb. Aug. 5, 2002) ("[T]o assert a substantive due process violation, a plaintiff must establish a constitutionally protected property interest and must allege that the [governmental] officials used their power in such an arbitrary and oppressive way that it shocks the conscience."); *see, also County of Sacramento v. Lewis*, 523 U.S. 833, 845–47, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (for governmental conduct to rise to the level of a substantive due process violation, the conduct must be so egregious and outrageous that it shocks the contemporary conscience).

 The allegations set forth under count II of plaintiffs' complaint-namely, that West Des Moines "expended public funds and manipulated and distorted public processes"-do not meet this standard by

---

**5.** Although it is not clear in plaintiffs' complaint, plaintiffs' resistance memorandum exclusively addresses *substantive*, rather than *procedural*, due process.

**6.** Paragraph 83 of plaintiffs' complaint alleges that: "West Des Moines and IDOT permitted General Growth to set the agenda and sched-

ule and define the scope of the NEPA review process...." "Complaint at ¶ 83. Because the parenthetical title to count II, and remaining factual allegations pertain exclusively to the City of West Des Moines, however, it appears certain plaintiffs intended to direct this count solely against the City."

any stretch of the imagination. Accordingly, Count II is dismissed as against the City of West Des Moines.

## III. CONCLUSION

For the reasons outlined above, all three motions to dismiss, filed by the City of West Des Moines on April 29, 2002; the state defendants on April 30, 2002; and the federal defendants on May 23, 2002 are granted. Plaintiffs King Irving Park Neighborhood Association, Merle Hay Mall and Valley West DM are dismissed as party-plaintiffs. Count I is limited to the procedures and remedies authorized by the Administrative Procedures Act, 5 U.S.C. ¶¶ 701 *et seq.* Count II of plaintiffs' complaint is dismissed in its entirety.

IT IS ORDERED.