# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 01-2905

_____

| | | |
|---|---|---|
| American Canoe Association, Inc.; Sierra Club, Ozark Chapter; | * | |
| | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| Missouri Soybean Association, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| United States Environmental Protection Agency; Christine Todd Whitman, Administrator; | * | |
| | * | |
| | * | |
| | * | |
| Defendants-Appellees, | * | |
| | * | |
| American Canoe Association, Inc.; Sierra Club, Ozark Chapter, | * | Appeal from the United States |
| | * | District Court for the Western |
| | * | District of Missouri. |
| Intervenors on Appeal. | * | |
| _____ | * | [PUBLISHED] |
| | * | |
| Missouri Soybean Association, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| United States Environmental Protection Agency; Christine Todd | * | |
| | * | |

Whitman, Administrator;                    *
                                           *
          Defendants-Appellees,            *
                                           *
American Canoe Association, Inc.;          *
Sierra Club, Ozark Chapter,                *
                                           *
          Intervenors on Appeal.           *
                      _____

                    Submitted:   April 15, 2002

                    Filed:   May 6, 2002
                      _____

Before HANSEN, Chief Judge, McMILLIAN and FAGG, Circuit Judges.
                      _____

PER CURIAM.

The Missouri Soybean Association (MSA), a nonprofit corporation comprised of Missouri soybean farmers and persons in soybean farming-related activities, sued the United States Environmental Protection Agency (EPA) under the Clean Water Act (CWA), 33 U.S.C. § 1365(a)(2) (1994), and the Administrative Procedures Act, 5 U.S.C. §§ 551-559, 701-706 (2000). MSA contends the EPA should have disapproved Missouri's 1998 list of pollution-impaired waters because some of the listed waters lacked documentation of pollution. MSA's suit was consolidated with the Sierra Club, Ozark Chapter's and the American Canoe Association, Inc.'s (environmental plaintiffs) earlier lawsuit also challenging the EPA's approval of Missouri's 1998 list. The environmental plaintiffs, however, claimed that Missouri's list was underinclusive.

The Clean Water Act requires states to identify and prioritize those waters within the state's boundaries that despite the use of technical controls for pollution

-2-

do not meet the state's water quality standards.  See  33 U.S.C. § 1313(d) (1994).

States are to "assemble and consider all existing and readily available water quality-related data and information" when preparing the list of impaired waters within the state.  40 C.F.R. § 130.22 (2001).  The list of impaired waters, known as the § 303(d) list, is then submitted to the EPA for approval.  Once the EPA approves the list, the impaired waters undergo scientific study to establish the total maximum daily load (TMDL) of specifically identified pollutants that may be released without violating state water quality standards.  See also Sierra Club, North Star Chapter v. Browner, 843 F. Supp. 1304, 1306-07 (D. Minn. 1993) (describing TMDL process).  States may then use a variety of regulatory techniques to implement the TMDL standards.

In preparing its 1998 list, Missouri divided waters into three categories. Category one waters were found to be impaired and scheduled for full TMDL development.  Category two waters were scheduled for further monitoring because the water quality data was "older or of lesser quality."  If additional monitoring confirmed the water's impairment, full TMDL development would proceed. Category three waters were recognized as impaired, but no practical remedy was available because the polluting conditions resulted from naturally occurring minerals, nutrients, or sediment. Missouri's list excluded the Missouri and the Mississippi rivers (the big rivers) because "there are no water quality contaminant violations."  The EPA added several waters to Missouri's list and found the waters in all three categories impaired, requiring TMDL development.  The Missouri Clean Water Commission then added the big rivers to Missouri's § 303(d) list, claiming the pollutant was "habitat loss" occurring because of "channelization."  The EPA approved Missouri's revised list.

MSA claims the EPA should have disapproved Missouri's § 303(d) list because the category two waters and the big rivers lacked the required documentation of pollution to be listed as impaired.  In its complaint, MSA claims the premature listing of the challenged waters injures its members through potential changes in land management practices, limitations on crop growth and rotation, limitations on sale

and use of fertilizers, pesticides and herbicides, decreases in property values, increases in farming costs, and the inability to plan for and rely on the use of certain waters and land caused by Clean Water Act requirements. The EPA and the environmental plaintiffs settled their dispute through a consent decree approved by the district court.[*] The consent decree does not declare the category two waters or the big rivers impaired, but describes the EPA's plans to develop TMDLs for all waters regardless of the initial category. MSA moved for partial summary judgment on the merits of the challenged water classification dispute. The EPA filed a motion to dismiss, claiming MSA lacked standing and MSA's suit was not ripe, and, in the alternative, moving for summary judgment on the merits of the challenged water classification dispute. The district court assumed MSA had standing, but found MSA's suit was not ripe for adjudication. The district court denied MSA's motion for partial summary judgment and granted partial summary judgment in favor of the EPA. MSA then moved for reconsideration of the summary judgment rulings and challenged the district court's approval of the consent decree between the EPA and the environmental plaintiffs. The district court denied MSA's motion and dismissed MSA's suit with prejudice. MSA now appeals the adverse rulings by the district court.

We reject MSA's contention that its suit is ripe for adjudication. "The ripeness doctrine flows both from the Article III 'cases' and 'controversies' limitation and also from prudential considerations for refusing to exercise jurisdiction." Nebraska Pub. Power Dist. v. MidAmerican Energy Co., 234 F.3d 1032, 1037 (8th Cir. 2000). The ripeness doctrine seeks "'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete

---

[*]The Honorable Scott O. Wright, District Judge for the Western District of Missouri.

way by the challenging parties.'" Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 732-33 (1998) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967)). To be ripe for decision a case must be fit for judicial resolution and the parties must experience hardship if the court withheld consideration of the case's merits. Ohio Forestry, 523 U.S. at 733.

The district court concluded that MSA's challenge was not ripe because MSA did not show that EPA's approval of Missouri's 1998 list affected MSA's members in any concrete way. After carefully reviewing the record, we agree. MSA contends, and the EPA concedes, that because the EPA challenged jurisdiction in a motion to dismiss, not a motion for summary judgment, MSA should be held to a "relatively modest" standard of asserting jurisdiction in its pleadings. Bennet v. Spear, 520 U.S. 154, 171 (1997). We agree. At the pleading stage, "we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Id. at 168 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). MSA's complaint focuses on potential harm to its members resulting from stricter controls of the use of the challenged waters. More stringent controls on water use, however, will not occur until after TMDLs are developed and implemented. Even then, it remains uncertain whether TMDL development or regulatory implementation will adversely impact MSA's members.

MSA contends that under the liberal pleading standard its assertion of potential decreases in property values states a current harm sufficient to present a ripe claim. A fair reading of MSA's complaint, however, does not support this contention. The complaint actually describes a "potential . . . decrease in property values and/or property rights as a result of Clean Water Act requirements." See Complaint, para. 12(e). In context, the "as a result of Clean Water Act requirements" clause is consistent with MSA's other claims of harm that may occur after TMDLs are implemented. MSA's contention that even if harm has not occurred, it is certainly impending similarly fails. The "potential" diminution of property values is not a

sufficiently immediate or sizeable threatened harm to warrant judicial intervention at this time. Neb. Public, 234 F.3d at 1038. Indeed, MSA's claim that it is injured by its inability to plan for future TMDL development highlights the speculative nature of any future regulation. We agree with the district court that until objectionable TMDLs are developed and implemented, "MSA's claims of harm are too remote to be anything other than speculative" and are not ripe for judicial resolution. Because MSA's suit is not ripe for adjudication, we must dismiss this suit for lack of jurisdiction. Ohio Forestry, 523 U.S. at 739. We, then, may not reach the merits of the challenged water classification dispute or MSA's challenge to the consent decree.

Dismissal for lack of jurisdiction is not an adjudication of the merits, thus the case must be dismissed without prejudice. In re Hall, Bayoutree Assoc., Ltd., 939 F.2d 802, 804 (9th Cir. 1991); Martinez v. Richardson, 472 F.2d 1121, 1126 (10th Cir. 1973); see also Fed. R. Civ. P. 41(b). Because the dismissal is without prejudice, the dismissal is not a bar to a later suit. McCarney v. Ford Motor Co., 657 F.2d 230, 233-34 (8th Cir. 1981).

Like the district court, we conclude that MSA's suit is not ripe thus we lack jurisdiction. Because dismissal for lack of jurisdiction must be without prejudice, we vacate the judgment entered by the district court and remand the case with directions to enter judgment consistent with this opinion, dismissing the case without prejudice for lack of jurisdiction.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.