Luke REUDIGER[1], Suzanne Savoie, Klamath–Siskiyou Wildlands Center, and Oregon Natural Resources Council, Oregon non-profit corporations, Plaintiffs,

v.

The UNITED STATES FOREST SERVICE, an agency of the United States Department of Agricultural, Defendant.

Fruit Growers Supply Company Defendant–Intervenor.

No. CIV. 04–3093–CO.

United States District Court, D. Oregon.

July 6, 2005.

1. In documents submitted to the court Luke Reudiger's name is spelled Reudiger and Ruediger, for consistency the court will use the spelling Reudiger.

Erin C. Madden, Portland, OR, for Plaintiffs.

Jeffrey K. Handy, United States Attorney's Office, Portland, OR, for Defendant.

Keith A. Meyer, Steven G. Madison, Quinn Emanuel Urquhart Oliver & Hedges, LLP, Los Angeles, CA, Robert A Shlachter, Stoll Stoll Berne Lokting & Shlachter, P.C., Portland, OR, for Defendant–Intervenor.

## ORDER

HOGAN, District Judge.

Magistrate Judge John P. Cooney filed Findings and Recommendation on July 6, 2005, in the above entitled case. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). When either party objects to any portion of a magistrate judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the magistrate judge's report. *See* 28 U.S.C. § 636(b)(1); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.,* 656 F.2d 1309, 1313 (9th Cir.1981),

*cert. denied,* 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

Plaintiffs have timely filed objections. I have, therefore, given *de novo* review of Magistrate Judge Cooney's rulings.

I find no error. Accordingly, I ADOPT Magistrate Judge Cooney's Findings and Recommendation filed July 6, 2005, in its entirety. Plaintiffs' motion for summary judgment (# 30) is denied, defendant United States Forest Service's motion for summary judgment (# 33) is granted, and defendant Fruit Growers Supply Company's motion for summary judgment (# 48) is denied as moot. The clerk shall enter judgment dismissing the case.

IT IS SO ORDERED.

Findings and Recommendation

COONEY, United States Magistrate Judge.

Plaintiffs bring this action under the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.,* challenging defendant Forest Service's (FS) issuance of a Helicopter Landing–Road Use Permit (RUP) that allows defendant-intervenor Fruit Growers Supply (FGS) to haul timber from private inholdings over Forest Service roads. Plaintiffs allege that FS violated NEPA when it approved the RUP without obtaining a legally and scientifically sufficient analysis of the projects' environmental impacts. Plaintiffs seek summary judgment and an injunction enjoining log hauling under the RUP (# 30). Defendants move for summary judgment (# 33, 48).

I. Facts

Defendant-intervenor FGS owns 240 acres of land within Township 48 North, Range 11 West, Section 36 ("Section 36").

AR 988–90, 1012–13. Section 36 is located within the boundaries of the Rogue River–Siskiyou National Forest, and is surrounded on all sides by National Forest System Lands. AR 1371, 1566.

On February 13, 1998, FGS filed the Oregon Dutch Timber Harvest Plan ("THP") with the State of California, in conformance with California's Forest Practice Act and Board of Forestry regulations. AR 1371. The THP was subsequently amended, with the most recent amendment filed on July 22, 2003. AR 990–1004, 1006–1130. The amended THP was accepted by the State of California, Department of Forestry and Fire Protection on February 24, 2003. AR 1134. The amended THP proposes to harvest a total of 2140 acres, including approximately 124 acres within Section 36. AR 1016, 1371. The "harvest area is not in a threatened or impaired watershed." AR 1007. Due to the lack of roads, harvesting within Section 36 will use helicopters to transport timber from the logging area to a suitable road for hauling. AR 1020.

As part of its planed timber harvest operations within Section 36, and because their land is totally surrounded by National Forest System lands, FGS applied for a RUP from FS on January 26, 1998. FGS proposed the use of an existing helicopter landing area and three existing FS roads. AR 562–564, 1020, 1466. The application was later clarified to include three landing sites, including one primary site and two secondary sites to be used mainly for staging areas and parking. AR 1136. FGS harvest will proceed with or without the RUP.[2] AR 1235, 1315, 1385, 1397, 1406, 1411, 1467, 1499; Decl. of Brown, ¶¶ 9, 10.

2. Plaintiffs deny this fact but do not support the denial with a citation to evidence, there-fore the fact is admitted.

In July, 2004, FS prepared an Environmental Assessment ("EA") for the Nabob Ridge Helicopter Landing—Road Use Project. AR 1368–1494. The purpose and need for the EA was to respond to FGSs' request for a RUP for "seasonal access and use of existing National Forest system roads and landing facilities along Nabob Ridge" to haul timber harvested from FGSs' private property. AR 1372, 1373, 1496. The EA considered three alternatives, "no-action," an action alternative representing FGSs' proposal, and an action alternative designed by FS. Under all alternatives, the harvest of FGSs' property would occur; under the "no-action" alternative, haul would be via alternative routes.[3] AR 1397, 1499.

On July 23, 2004, Erin Connelly, District Ranger for the Applegate Ranger District, signed a Decision Notice and Finding of No Significant Impact ("DN/FONSI") for the Nabob Ridge Helicopter Landing—Road Use Project. AR 1495–1509. A legal notice of the Decision was published in the Medford *Mail Tribune* on July 25, 2004. AR 1510–1511. Alternative # 2, as described in the EA, was chosen as the alternative for implementation. AR 1496. The DN/FONSI stated that there would be no significant impacts associated with the project and concluded that FS did not have to prepare an EIS. AR 1502. Plaintiffs administratively appealed the decision, and the appeals were denied by FS.[4] AR 1517–26, 1527–49, 1560, 1561.

The selected Alternative allows FGS access to and use of existing National Forest System roads and landing facilities during four dry months of the year for two years. AR 1398–1401, 1409, 1496. The main log landing site will accommodate 90–100% of the timber harvested from FGSs' private land. Two secondary sites will accommodate any remaining log deck operations as well as serve as staging areas for equipment and parking areas for worker vehicles. Two additional overflow parking areas may also be utilized if needed. The Alternative also includes hauling of commercial logs along four existing FS roads, and includes the repair of a 370' segment damaged by land-slide. AR 1413.

If FGS is unable to use the existing FS roads and helicopter facilities at Nabob Ridge, it will still log the timber under the terms of the THP via helicopter through the use of other landing sites on FGSs' property in Section 33. This would increase the length of the helicopter flight by roughly one mile, would make the harvest more expensive, and it would take more time to complete the logging operations. Decl. of Brown, ¶¶ 12, 13. FGS can also take logs from Section 33 without any federal action by hauling the logs up the 1065 road to Ward's Gap and then south. This haul route is over FGS–FS co-op roads located on the Rogue and Klamath National Forests where use permits are not required. Supplemental Decl. of Salvestro, ¶ 6.

Joe Bar residents have complained about dust, traffic and the poor road condition. If the RUP is granted, the log trucks will not pass in front plaintiffs' residence, nor will they travel along the entire portion of the 1050 road that passes through the east-west "middle" of the Joe Bar subdivision. Decl. of Connelly, ¶ 18. However, if granted, the RUP would require the temporary closure of road 1060 and the Tincup trailhead. This is the closest trail network to plaintiffs' home con-

---

**3.** Plaintiffs deny this fact but do not support the denial with a citation to evidence, therefore the fact is admitted.

**4.** Defendant FGS denies this fact but does not support the denial with a citation to evidence, therefore the fact is admitted.

necting to the Pacific Crest Trial and the Siskiyou Crest, and plaintiffs would be able to hear helicopters at Joe Bar. Decl. of Reudiger, ¶ 8; Decl. of Savoie, ¶ 8.

Under the RUP, FGS is responsible for the traffic generated road maintenance, when hauling, on all roads under permit. The maintenance includes roadway grading, dust abatement and signing. Decl. of Connelly, ¶ 9. Maintenance of FS roads 1050 and 1060 would have occurred in 2004 and 2005 whether or not a permit exists. *Id.*, ¶ 11.

As stated in paragraph 12 of the complaint, plaintiffs claim that they are harmed by defendants not obtaining a legally and scientifically sufficient analysis of the projects' environmental impacts and the resulting adverse effects of commercial hauling on aesthetic value, water quality, fisheries, and the environment. Plaintiffs submitted declarations of plaintiffs Luke Reudiger, and Suzanne Savoie, Shannon Clery, in which they allege injury to themselves.

Defendants' argue that Clery's alleged injury is based on the logging itself and has nothing to do with the issuance of the RUP. Plaintiffs do not respond to that argument. The court finds that Clery's allegations are not relevant to the issuance of the RUP.

Reudiger and Savoie live at Joe Bar, on Elliot Creek Road and are the closest residents to the proposed logging section. Decl. of Reudiger, ¶ 2, Decl. of Savoie, ¶¶ 1, 4. They allege that their quality of life will be greatly impacted by the RUP due to: (1) increased safety risks of log trucks on Elliot Creek Road; (2) noise disturbance associated with helicopter logging and log hauling; (3) impact to Joe Dutch 1 bridge, which they rely on for access; (4) closing Road 1060 and the Tincup trailhead; and (5) harm to future scientific and recreational experience from the closure of

Tincup trailhead, the closest trail network connecting to the Pacific Crest Trail and the Siskiyou Crest, and impact to the botanical, biological, recreational, and aesthetic qualities of the areas surrounding the private land to be logged. Decl. of Reudiger, ¶¶ 8, 10, Decl. of Savoie, ¶¶ 7, 8.

Reudiger further alleges that his quality of life will be greatly impacted by the RUP due to: (1) increased fire risks; (2) noxious weeds spreading onto private property; (3) decreased water quality; and (4) dust issues. Decl. of Reudiger, ¶¶ 8, 10. Savoie further alleges that her quality of life will be greatly impacted by the RUP, due to the logging it facilitates and its negative impact on her view from the Tincup trail. Decl. of Savoie, ¶ 10.

Defendant FS argues that plaintiffs lack standing to bring this suit, since they have not alleged an injury-in-fact, and plaintiffs claimed injuries cannot be redressed by this court. Federal Def.'s Mem. in Supp. of Mot. for Summ. J. and in Opp'n to Pl.s' Mot. for Summ. J., 8. Defendant FGS argues that it will proceed with the harvest regardless of whether it receives the RUP. Decl. of Brown, ¶ 9, 10.

## II. Legal Standards

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a moving party is entitled to summary judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *Bhan v. NME Hosps., Inc.,* 929 F.2d 1404, 1409 (9th Cir.), *cert. denied,* 502 U.S. 994, 112 S.Ct. 617, 116 L.Ed.2d 639 (1991). In deciding a motion for summary judgment, the court must determine, based on the evidence of record, whether there is any material dispute of fact that requires a trial. *Waldridge v. American Hoechst*

*Corp.*, 24 F.3d 918, 920 (7th Cir.1994) (citations omitted). The parties bear the burden of identifying the evidence that will facilitate the court's assessment. *Id.*

The moving party bears the initial burden of proof. *See Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir.), *cert. denied,* 516 U.S. 987, 116 S.Ct. 515, 133 L.Ed.2d 424 (1995). The moving party meets this burden by identifying portions of the record on file which demonstrates the absence of any genuine issue of material fact. *Id.* "[T]he moving party ... need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case." *Cray Communications, Inc. v. Novatel Computer Systems, Inc.*, 33 F.3d 390, 393 (4th Cir.1994), *cert. denied,* 513 U.S. 1191, 115 S.Ct. 1254, 131 L.Ed.2d 135 (1995) (citation omitted); *See City of Mt. Pleasant, Iowa v. Associated Electric Co-op., Inc.*, 838 F.2d 268, 273–274 (8th Cir.1988)(it is sufficient for the movant to argue that the record does not contain an issue of fact and to identify that part of the record that supports that assertion).

In assessing whether a party has met their burden, the court must view the evidence in the light most favorable to the nonmoving party. *Allen v. City of Los Angeles*, 66 F.3d 1052 (9th Cir.1995). All reasonable inferences are drawn in favor of the nonmovant. *Id.*

If the moving party meets their burden, the burden shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Auvil v. CBS "60 Minutes"*, 67 F.3d 816 (9th Cir.1995), *cert. denied,* 517 U.S. 1167, 116 S.Ct. 1567, 134 L.Ed.2d 666 (1996). The nonmoving party cannot carry their burden by relying solely on the facts alleged in their pleadings. *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir.1993). Instead, their response, by affidavits or as

otherwise provided in Rule 56, must designate specific facts showing there is a genuine issue for trial. *Id.*

In addition to the requirements of Fed. R.Civ.P. 56(e), parties must also comply with the requirements set forth in Local Rule 56.1. Local Rule 56.1(d) sets forth the requirements for a party's concise statement of facts, and requires a citation to particular evidence supporting a party's statement or the denial of a material fact. Local Rule 56.1(e) provides in part that "the court has no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties." Local Rule 56.1(f) provides that material facts set forth in a concise statement of facts that are not specifically denied or otherwise controverted by a separate concise statement of the opposing party will be deemed admitted. The court is not required to search the record to determine whether any factual disputes exists, and an opposing party's failure to designate and reference triable facts, in light of the requirements of Fed.R.Civ.P. 56(e), Local Rule 56.1, and governing precedent may be fatal to the opposition. *See Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C.Cir.1988).

### III. Discussion

Federal defendant FS moves for summary judgment, arguing that:

1) plaintiffs' lack standing to obtain the requested judgment and remedy; and

2) plaintiffs will not sustain injury-in-fact, nor can any alleged injury be favorably redressed by this court.

Defendant-intervenor FGS moves for summary judgment, arguing that:

1) FGSs' timber harvest is not dependant on the Nabob Project;

2) an injunction would not prevent the timber harvest, but would cause financial hardship to FGS; and

3) plaintiffs have not given any evidence to show that they will experience imminent harm arising from the issuance of the RUP.

In response, plaintiffs argue that:

1) both individual and organizational plaintiffs have established standing;

2) plaintiffs have established injuries that will be suffered as a result of the federal action;

3) plaintiffs have established injury from the diminishing of the recreational values of the Tincup trailhead due to its closure; and

4) the remedy sought by plaintiffs will redress the injuries complained of.

In reply, FS argues that:

1) plaintiffs lack standing to bring this suit;

2) plaintiffs complaint about helicopter noise will not be remedied by the granting of an injunction;

3) plaintiffs argument that the harm would not be to them individually, but to the "subdivision", is not a particularized injury-in-fact;

4) plaintiffs are not harmed by use of the Joe Dutch 1 bridge or the use of Forest roads; and

5) plaintiffs may suffer minor inconveniences from the closure of the Tincup trailhead, but not injury-in-fact that can be redressed.

In reply, FGS argues that:

1) FGS can complete the harvest without any further federal action;

2) FGS has an existing RUP to haul from section 33;

3) FGS can haul its logs on co-op roads where no permit is required; and

4) injunctive relief is neither necessary nor warranted.

A. *Injury in Fact*

■ Standing pertains to a federal court's subject matter jurisdiction under Article III. *See White v. Lee,* 227 F.3d 1214, 1242 (9th Cir.2000). To satisfy Article III's standing requirements, a plaintiff must establish that he has suffered or is threatened with an actual or imminent, concrete and particularized "injury in fact," fairly traceable to the challenged action of defendant, and likely to be redressed by a favorable decision. *Friends of the Earth, Inc., v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The plaintiff bears the burden of establishing each element. *Valley Forge Christian College v. Americans United for the Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

The complaint for declaratory and injunctive relief alleges that Luke Reudiger and his partner, Suzanne Savoie, live in the Elliot Creek watershed in the Joe Bar subdivision, and both are members of Klamath–Siskiyou Wildlands Center (KS–Wild). Comp. at 3, ¶¶ 8, 9. The complaint alleges that KS–Wild is a conservation organization based in Williams, Oregon whose "mission is to conserve the globally outstanding biological diversity of the Klamath–Siskiyou region in southern Oregon and northern California," including the preservation of "mature and old growth forests and associated species in the Klamath–Siskiyou ecoregion." Comp. at 3, ¶ 10. The complaint further alleges that KS–Wild ·and its members will suffer injury to their interests by the issuance of the RUP without NEPA compliance, which ad-

versely affects Northern Spotted Owls and disturbs other sensitive species and their habitat. *Id.,* ¶¶ 2, 3, 12. The latter allegation forms the basis for plaintiffs' request for injunctive relief. The complaint also alleges that Oregon Natural Resources Council (ONRC) is a non-profit organization based in Portland, Oregon, "dedicated to defending and conserving Oregon's wild lands, wildlife, and waters—including the state's remaining old growth and roadless areas—and restoring Oregon's forest ecosystems to a naturally-functioning state with a full complement of native species." Comp. 3–4, ¶ 11.

■ Changes in aesthetics and ecology and similar harm may amount to an injury in fact sufficient to lay the basis for standing under section 10 of the APA. *Sierra Club v. Morton,* 405 U.S. 727, 734, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). However, an organization's special interest is not by itself sufficient to establish injury in fact to the organization. *Id.* at 738–39, 92 S.Ct. 1361. "[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Id.* at 734–35, 92 S.Ct. 1361. Thus, unless an organization alleges that it or its members are effected by the activity it seeks to enjoin, it does not adequately allege injury in fact. *Sierra Club,* 405 U.S. at 735, 92 S.Ct. 1361.

■ An organization that has not itself suffered injury may be permitted to sue in a representative capacity for injuries to its members. *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). "An association has standing ... when its members would have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires individual members'

participation in the lawsuit." *Friends of the Earth,* 528 U.S. at 169, 120 S.Ct. 693. The organization is not a proper representative entitled to seek judicial review under § 702 of the APA if the allegedly affected interests set forth in the declarations are not sufficiently related to the purpose of the organization. *See Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

■ Reudiger and Savoie do not explicitly state which of their interests, if any, are affected by defendant FS's approval of the RUP, but their declarations are fairly read to allege affected interests in the quiet enjoyment of their property and in the value of their property. *Klamath–Siskiyou Wildlands Center v. Forest Service,* No. 02–3015, slip op. at 8–9 (D.OR. July 26, 2002). Reudiger and Savoie allege interests in conserving biodiversity or threatened species and habitat, but that appears to be associated with the logging of the private land rather than the issuance of the RUP. *Id.* at 9.

■ Plaintiffs' declarations allege that the project will cause increased traffic, noise, negative land use impacts, and decreased water quality. These declarations fail to establish an injury to confer standing, because they do not contain specific facts showing that they will be injured by the project. *See People for the Ethical Treatment of Animals v. Dept. of Health and Human Services,* 917 F.2d 15, 16–17 (9th Cir.1990). The prevention of safety, environmental, and traffic related impacts to a region are not the type of concrete, litigant-specific interests upon which a party may base a procedural injury. *Taubman Realty Group Ltd. Partnership v. Mineta,* 198 F.Supp.2d 744, 756 (E.D.Va. 2002), *affirmed,* 320 F.3d 475 (4th Cir. 2003). Such interests are common to anyone living or working in the affected area,

and, as such, are considered generalized grievances not appropriately brought before the court. *Id.; See One Thousand Friends of Iowa v. Mineta*, 250 F.Supp.2d 1064, 1072 (S.D.Iowa 2002) (complaints regarding adverse impacts from a project constitute a generalized injury which should be considered by the legislative, rather than the judicial branch). The temporary closing of the Tincup trailhead and road are not specific to plaintiffs, but is also a generalized grievance common to anyone living or working in the affected area. *Id.*

Plaintiffs' allegations fail to establish an injury to confer standing, because they do not contain specific facts showing that they will be injured by the project. Therefore, defendant FS's motion for summary judgment should be granted.

## B. *Redressability*

■ "Redressability requires an analysis of whether the court has the power to right or to prevent the claimed injury. In this respect, the potential for redress assures that the plaintiff's stake in the lawsuit's outcome remains high throughout the litigation." *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir.1982).

■ Plaintiffs have not presented any evidence to demonstrate that the logging is dependant on the RUP and that the denial of the RUP would redress their complaints. Defendant FGS has given evidence that it will go forward with the harvest regardless of whether the RUP is issued, it has other RUPs, and, even if those are revoked, it will still be able to haul its logs out via a co-op road to a public road. Decl. Brown, ¶ 12, Decl. Salvestro, ¶ 4, Supplemental Decl. Salvestro, ¶ 6.

Plaintiffs argue that the RUP is necessary for FGS to log its property. Comp. ¶ 26. However, FGS's evidence shows that the RUP would only serve to make the harvest more economically efficient by shortening the length the helicopters would have to fly and the trucks would have to drive. Decl. Brown ¶¶ 12, 13.

Plaintiff Savoie stated that logging trucks already use the road, pose a safety hazard, and use the Joe Dutch 1 bridge. Decl. Savoie, ¶ 7. Thus, an injunction would not solve those problems. Further, FGS's logging trucks would not pass plaintiffs' residence, and Joe Bar residents have already been complaining about dust, traffic and the poor condition of the road. Decl. Connelly, ¶ 18. These issues would not be redressed by granting injunctive relief. In addition, granting an injunction would not redress plaintiffs' claims of impact to the botanical, biological, recreational, and aesthetic qualities of the areas surrounding the private land to be logged, or the noise from the helicopters.

Since Reudiger and Savoie do not have standing to sue in their own right, due to the lack of redressability or an injury in fact, KS–Wild and ONRC do not have standing. Therefore, defendant FS's motion for summary judgment should be granted.

## IV. RECOMMENDATION

Based on the foregoing, it is recommended that plaintiffs' motion for summary judgment (# 30) be denied, defendant FS's motion for summary judgment (# 33) be granted, defendant FGS's motion for summary judgment (# 48) be denied as moot, and a judgment entered dismissing the case.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the dis-

trict court's judgment or appealable order. *The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten days within which to file a response to the objections.* Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.