RILEY, Chief Judge,
dissenting.
Relying on an expansive reading of a single line in Worth v. Seldin, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the majority unnecessarily decides a difficult Article III standing question of first impression in our circuit, leading to an unsound ruling on the merits. I respectfully dissent.
I. STANDING
As the majority acknowledges, the plaintiffs in this case “do not allege actual damages.” Ante at 496 (emphasis added). This putative “identity theft” case contains no trace of actual identity theft. The plaintiffs, Sam’s Club shoppers Steven E. Hammer and Michael D. White (shoppers), do not allege the receipts containing their credit card information were ever at risk of exposure to would-be identity thieves. Until this lawsuit, the receipts apparently never left the shoppers’ possessions, and now the receipts are safely ensconced in the sealed record. Even if credit card information listed on secured receipts could somehow cause anxiety, there is no allegation the shoppers suffered so much as a sleepless night or any other psychological harm. Unlike the failed plaintiffs in Clapper v. Amnesty International USA, 568 U.S. -, -, 133 S.Ct. 1138, 1146, 185 L.Ed.2d 264 (2013) (internal quotation omitted), the shoppers do not even claim to “have undertaken costly and burdensome measures to protect” themselves from the risk they supposedly face. The shoppers most assuredly lack Article III standing.
A. Injury in Fact
The shoppers’ only basis for appearing in federal court, the majority recognizes, is a harmless statutory violation: “Sam’s Club invaded” the shoppers’ “legal right to obtain a receipt at the point of sale showing no more than the last five digits of the consumer’s credit or debit card number.” Ante at 498. To be sure, this invasion of a statutory right is an injury in law. But it is far from “well established,” as the majority asserts, id., that this trivial statutory violation is an injury in fact. The shoppers have suffered injury without damage, “[a] legal wrong” which ordinarily “will not sustain a lawsuit because no harm resulted from it.” See Black’s Law Dictionary 856 (9th ed.2009) (defining injuria absque damno) (emphasis added). “It is a longstanding principle in civil law that there can be no monetary recovery unless the plaintiff has suffered harm.” Mira v. Nuclear Measurements Corp., 107 F.3d 466, 473 (7th Cir.1997); see also, e.g., Pierce v. Ramsey Winch Co., 753 F.2d 416, 435 (5th Cir.1985) (“[Ijnjury without damage creates no right to compensation.”). By requiring injury in fact, the Supreme Court recognizes that Article III incorporates this traditional principle:
An interest unrelated to injury in fact is insufficient to give a plaintiff standing.
*505 Vt. Agency of Natural Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 772, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) (emphasis added).
Ignoring the last thirty-nine years of Article III standing jurisprudence, the majority adopts an extraordinarily broad reading of the Supreme Court’s 1975 dictum in Warth that “ ‘[t]he actual or threatened injury required by Art. Ill may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.’ ” Ante at 498 (quoting Warth, 422 U.S. at 500, 95 S.Ct. 2197). The Supreme Court has never actually held an unharmed plaintiff had standing by virtue of a bare statutory violation.[6]
The majority justifies its adoption of this theory that “the actual-injury requirement may be satisfied solely by the invasion of a legal right that Congress created ” on the basis that this theory “is not a novel [one] within the law of standing.” Ante at 498 (footnote omitted). This aged theory is even less novel than the majority suggests. Riding circuit, Justice Joseph Story wrote in 1838, “Actual, perceptible damage is not indispensable as the foundation of an action. The law tolerates no farther inquiry than whether there has been the violation of a right.” Webb v. Portland Mfg. Co., 29 F.Cas. 506, 508 (D.Me.1838) (No. 17,322).
Since Justice Story decided Webb in 1838 and Justice Powell authored Warth in 1975, the standing doctrine has become more protective of the judicial branch’s limited role in our tripartite system of government.[7] Gone are the days when the federal courthouse door was rarely closed to plaintiffs, no matter how attenuated or speculative their supposed injury. See, e.g., Lewis v. Casey, 518 U.S. 343, 353 n. 3, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (“This would perhaps have seemed like good law at the time of Flast[ v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) ], but our later opinions have made it explicitly clear that Flast erred in assuming that assurance of ‘serious and adversarial treatment’ was the only value protected by standing.”).
In recent years, the Supreme Court has strongly suggested that to have a case under Article III, a plaintiff must have suffered not only the violation of a legal right (the “injury” of “injury in fact”), but also a factual harm (the “in fact”). See, e.g., Lexmark Int’l, Inc. v. Static Control Components, Inc., 572 U.S. -, -, 134 S.Ct. 1377, 1386, 188 L.Ed.2d 392 (2014) (“The plaintiff must have suffered or be imminently threatened with a concrete and particularized ‘injury in fact.’ ”); Monsan *506 to Co. v. Geertson Seed Farms, 561 U.S. 139, 155, 130 S.Ct. 2743, 2755, 177 L.Ed.2d 461 (2010) (“Such harms ... are sufficiently concrete to satisfy the injury-in-fact prong of the constitutional standing analysis.” (emphasis added)); Vermont Agency, 529 U.S. at 771, 120 S.Ct. 1858 (defining “injury in fact” as “a harm that is both ‘concrete’ and ‘actual or imminent, not conjectural or hypothetical’ ” (emphasis added) (quoting Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990))); Fed. Election Comm’n v. Akins, 524 U.S. 11, 24, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998) (“[Wjhere a harm is concrete, though widely shared, the Court has found ‘injury in fact.’ ” (emphasis added)).
Notably, in Lujan v. Defenders of Wildlife, 504 U.S. 555, 578, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), the Supreme Court read Warth narrowly, explaining Congress’ power to create standing by statute is limited to “elevating to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.” De facto means “actual; existing in fact.” Black’s Law Dictionary, supra, at 479 (emphasis added). According to Lu-jan, Warth’s dictum stands for the limited and uncontroversial proposition that Congress can, through statute, create a legal remedy for a factual harm. If there is damage without injury, an act of Congress can generate an Article III case where otherwise there would be none. See Lujan, 504 U.S. at 578, 112 S.Ct. 2130. For example, Congress can assign a statutory value to the harm a person experiences from living in a racially segregated community or a private company faces from competing against a government-owned company. See Trafficante v. Metro. Life Ins. Co., 409 U.S. 205, 208-12, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972); Hardin v. Ky. Utils. Co., 390 U.S. 1, 6, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968).
Whether Congress can create justiciable injuries where there is no real harm presents an extremely difficult constitutional question. See Wallace v. ConAgra Foods, Inc., Inc., F.3d 1025, 1032 (8th Cir.2014). It is a question the Supreme Court has never answered, and—until today—neither had our court.[8] In fact, our court recently recognized the question’s difficulty in Wallace and declined to answer based on statutory grounds and the canon of constitutional avoidance.[9] See id. And in 2012, *507 the Supreme Court granted certiorari and heard argument on this precise question in First American Financial Corp. v. Edwards, 567 U.S. -, -, 132 S.Ct. 2536, 2537, 183 L.Ed.2d 611 (2012) (per curiam), yet ultimately dismissed the writ as improvidently granted, evidently because the case did not involve a purely legal injury.[10]
Although the justices did not issue a decision in First American, their questions at argument reveal the difficulty of the standing issue raised in both First American and this case. Regarding an argument that “violation of a statute is injury in fact,” Chief Justice Roberts said:
I would have thought that would be called injury in law. And when we say, as all our standing cases have, ... that what is required is injury in fact, I understand that to be in contradistinction to injury in law. And when you tell me all that you’ve got or all that you want to plead is violation of the statute, that doesn’t sound like injury in fact.
Oral Argument at 32:25, First Am., 567 U.S. at -, 132 S.Ct. at 2537 (emphasis added). Responding to an argument— paralleled by one advanced by the shoppers and accepted by the majority, ante at 498—that the plaintiff was injured by being “denied something he [wa]s entitled to” (there, “another expert’s untainted referral”; here, a receipt with no more than five printed digits), Justice Kennedy remarked:
Dot's circular for you to say he was denied something that he is entitled to. The question is whether there is an injury. The Constitution requires an injury.... If you were to say he was entitled to it and therefore, there is an injury, that’s just—that’s just circular.
Id. at 44:54.
If the majority is correct, the federal courts will find themselves deciding strange “cases” indeed. Without any factual limits on its ability to create statutory injuries, Congress could transform the courts into implementers of majoritarian economic and social policies (the proper role of the elected branches) rather than bulwarks against majoritarian excess.[11] See, e.g., Clapper, 568 U.S. at -, 133 S.Ct. at 1146 (“The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches.”). Congress would be able to give one’s neighbor, co-worker, or political adversary the right to sue if one fails to live the way the majority in Congress thinks one should.[12] I question whether the Supreme *508 Court’s carefully crafted injury in fact jurisprudence can be so easily circumvented by Congress. See, e.g., Summers v. Earth Island Inst., 555 U.S. 488, 497, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) (“[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute.” (emphasis added)).
B. Constitutional Avoidance
In any event, I see no reason to decide such a complex constitutional question in this case. It is a bedrock rule, “repeatedly affirmed” and “ ‘beyond debate,’ ” that federal courts must avoid deciding “ ‘grave and doubtful constitutional questions’ ” whenever possible by adopting a reasonable alternative interpretation of a potentially suspect statute. Jones v. United States, 526 U.S. 227, 239-40, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (quoting Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988), and U.S. ex rel. Attorney Gen. v. Del. & Hudson Co., 213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836 (1909)); see also, e.g., Ashwander v. TVA, 297 U.S. 288, 345-48, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandéis, J., concurring); Union Pac. R.R. Co. v. DHS, 738 F.3d 885, 892-93 (8th Cir.2013). “Rather than confronting the difficult constitutional question whether Congress can drill through th[e] hard floor of injury in fact by creating an injury in law (i.e., a statutory cause of action requiring no showing the plaintiff was personally and actually harmed),” I would “ ‘follow th[is] traditional rule.’ ” Wallace, 747 F.3d at 1032 (footnote omitted) (quoting Union Pacific, 738 F.3d at 893).
The statute at issue here is open to the eminently reasonable interpretation offered in a prior panel opinion joined by one member of today’s majority:
This language [in 15 U.S.C. § 1681n(a)(l)(A) ] clearly provides that an award of statutory damages is available as an alternative to an award of actual damages. The plaintiffs argue the district court overlooked this fact and summary judgment was, therefore, inappropriate. We disagree. It does not necessarily follow from the cited language that statutory damages are available where a plaintiff fails to prove actual damages. A reasonable reading of the statute could still require proof of actual damages but simply substitute statutory rather than actual damages for the purpose of calculating the damage award.
Dowell v. Wells Fargo Bank, NA, 517 F.3d 1024, 1026 (8th Cir.2008) (per curiam).
Rather than rejecting the Dowell panel’s reasonable analysis as the majority does, I would follow Dowell’s interpretation of § 1681n(a)(l)(A). Instead of offering a doubtful answer to a difficult constitutional question, I would resolve this case on the settled and unexceptional ground that the shoppers lack Article III standing unless success on the merits is likely to provide redress. See Lujan, 504 U.S. at 561, 112 S.Ct. 2130. Under Dowell’s reading of the statute, the shoppers have no hope of redress without some sort of actual (though not necessarily economic) harm. Because the shoppers failed to allege actual harm, they lack Article III standing.[13] See id.
*509 By rejecting Dowell, the majority embraces the shoppers’ reading of § 1681n(a)(l)(A), which will lead to results Congress cannot have intended. According to the shoppers, the stores are liable for billions of dollars in statutory damages without any evidence the shoppers, and the class they wish to represent, were harmed at all. From small to large retailers, the shoppers’ interpretation could easily result in bankruptcy. A retailer earning less than $100 per average receipt could not afford a $100 penalty per receipt, let alone $1,000. The district court took the fact that damages “would exceed $1 billion despite the absence of a penny’s worth of injury,” as a sign “that Congress probably knew not what they wrought.” (Internal quotations omitted).
But in writing a statute, Congress need not restate what is already obvious from the Constitution and the federal courts’ constitutional jurisprudence. “Congress is ‘predominantly a lawyer’s body,’ and it is appropriate for [the courts] ‘to assume that [the people’s] elected representatives ... know the law.’ ” Albernaz v. United
States, 450 U.S. 333, 341, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) (quoting Cannon v. Univ. of Chi, 441 U.S. 677, 696-97, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), and Callanan v. United States, 364 U.S. 587, 594, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961)). “Congress legislates against the background of ... standing.” Bennett v. Spear, 520 U.S. 154, 163, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997).[14] Congress presumably expected the federal courts to require factual harm under Article Ill’s injury in fact prong. It makes sense that Congress intended § 1681n(a)(l)(A) to permit consumers suffering real harm from a retailer’s failure to truncate credit card numbers to recover statutory damages even if actual damages were minimal or difficult to quantify. But it does not make sense to assume Congress intended to confer a windfall on consumers—like the shoppers in this case—who face no reasonable likelihood of harm, let alone any actual harm. These shoppers’ secured receipts could not possibly lead to the identity theft Congress wanted the FACTA to prevent. In this context, our court should not pre *510 sume the people’s elected legislators “knew not what they wrought” or intended potentially to bankrupt retailers of all sizes and descriptions in the absence of any harm.
The canon of constitutional avoidance “is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts. The canon is thus a means of giving effect to congressional intent, not subverting it.” Clark, 543 U.S. at 381-82, 125 S.Ct. 716 (emphasis added) (citations omitted). The government, intervening in support of the shoppers’ theory that injury in law equals injury in fact, concedes that the Dowell panel’s interpretation “is plausible.” That should be the end of this appeal.[15]
II. MERITS
Setting aside the majority’s precarious constitutional theory, I fear the majority’s resolution of the merits strays from the unambiguous statutory text. Misreading the remedy provision applicable to the shoppers’ FACTA claims, § 1681n(a)(l)(A), to confer standing in the absence of actual harm leads the majority to an unpleasant choice: either (1) follow the plain text of FACTA, 15 U.S.C. § 1681c(g)(l), and authorize unharmed Sam’s Club credit-cardholders to recover disproportionate damages, or (2) misread other parts of FACTA to preclude such damages even for those who are harmed. By taking the second path, the majority thwarts clear congressional intent and makes it impossible for truly harmed cardholders to recover the statutory damages to which they should be entitled. In accordance with well-established principles of statutory construction, I would instead follow the clear and unambiguous text of § 1681c(g)(l), giving effect to Congress’ plainly expressed intent to provide a remedy for any cardholders who suffered real harm.
A. Statutory Text
All questions of statutory construction begin with the same first step: a reading of the statute. See, e.g., Hawaii v. Office of Hawaiian Affairs, 556 U.S. 163, 173, 129 S.Ct. 1436, 173 L.Ed.2d 333 (2009). When the text of the statute is clear, this first step “is also the last: ‘judicial inquiry is complete.’ ” Conn. Nat’l Bank v. Germain, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (quoting Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)). The text at issue provides:
[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.
15 U.S.C. § 1681c(g)(l) (emphasis added). This prohibition only applies “to receipts that are electronically printed,” not “transactions in which the sole means of recording a credit card or debit card account *511 number is by handwriting or by an imprint or copy of the card.” Id. § 1681c(g)(2).
Congress could hardly have spoken more plainly. Only five—the last five— digits of any credit or debit card number may be printed anywhere on any electronically printed receipt. This is true whether the digits are labeled “credit card number,” “Account #,” “Member,” or not labeled at all. Had Congress intended labels to matter, Congress could easily have said so (e.g., “more than the last 5 digits of the card number so labeled”). Instead, Congress spoke in unequivocal terms, presumably saying just what it meant and meaning exactly what it said. See Conn. Nat’l Bank, 503 U.S. at 254, 112 S.Ct. 1146. Our court’s sole task, then, is to enforce the plain statutory language of § 1681 c(g) “according to its terms.” Jimenez v. Quarterman, 555 U.S. 113, 118, 129 S.Ct. 681, 172 L.Ed.2d 475 (2009). By printing “more than the last 5 digits of the card number” on “any receipt” “electronically printed,” Sam’s Club plainly violated § 1681c(g).
B. Objective Reasonableness
Because the statute unambiguously prohibits printing too many digits of the number, regardless of labeling, it was not objectively reasonable for Sam’s Club to read a labeling requirement into the statute. See, e.g., Alabama v. North Carolina, 560 U.S. 330, 352, 130 S.Ct. 2295, 176 L.Ed.2d 1070 (2010) (“We do not—we cannot—add provisions to a federal statute.”).
In Safeco Insurance Company of America v. Burr, 551 U.S. 47, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007), the Supreme Court established two points of law relevant to this appeal: (1) a “willful” violation of the FACTA includes a “reckless disregard” of its requirements, and (2) a violation premised on an “objectively reasonable” reading of the FACTA cannot be “reckless.” Id. at 52, 69, 70 n. 20, 127 S.Ct. 2201. To be objectively reasonable, a reading must have “a foundation in the statutory text.” Id. at 69-70, 127 S.Ct. 2201. If that text is “less-than-pellucid,” the absence of authoritative guidance may also affect the reasonableness analysis.[16] Id. at 70, 127 S.Ct. 2201. But a reading which is inconsistent with the pellucid text of the statute, unsupported by any authoritative guidance, and at odds with the obvious purpose of the statute, is objectively unreasonable. See id. at 69-70, 127 S.Ct. 2201. Sam’s Club’s imaginative reading falls squarely into this category. According to Sam’s Club, all manner of identifying information—indeed, every single letter and number on a credit card, including the holder’s name, the account number, the security code, and the expiration date—could be printed on a receipt so long as the information was mislabeled or not labeled at all. Not so, according to the plain text of the statute. No reasonable reader of the statute, even the majority’s “literal-minded company executive,” ante at 502, could think otherwise.
Sam’s Club strains to direct the court’s focus to the term “card number,” insisting a “membership number” cannot be a “card number,” in order to distract from the decisive term: “5 digits.” Perhaps the term “card number” in the abstract is open to multiple reasonable interpretations, but the statute does not prohibit printing card *512 numbers; it prohibits printing digits of a card number. What matters is (1) how many of the digits are printed on the receipt, and (2) whether those digits make up some sequential part of the card number. As the Seventh Circuit explained, “we need not essay a definition of ‘card number’ as an original matter, because we can’t see why anyone should care how the term is defined. A precise definition does not matter as long as the receipt contains too few digits to allow identity theft.” Van Straaten v. Shell Oil Prods. Co., 678 F.3d 486, 488 (7th Cir.2012) (second emphasis added). The stores printed every single digit required for identity theft, a practice no reasonable reading of FACTA would allow.
C. Willfulness
Because the stores’ reading was not objectively reasonable, it is a fact question whether the stores’ violation was willful, and the shoppers (with standing bestowed by the majority) have presented more than enough evidence to submit this question to a jury. See Fed.R.Civ.P. 56(a).
As early as 2004, one of Sam’s Club’s fraud experts warned that membership and credit numbers should differ because “the way membership is handled—well, including on printing on receipts, is less secure than how a credit card number would be handled.” Yet Sam’s Club failed to mitigate this , admittedly “unnecessary risk” despite numerous warnings. In 2005, an internal security unit issued a report, addressing “top-level issues” “where customer and associate personal information could be compromised intentionally or otherwise.” The first “top-level issue”: “Membership numbers are not handled in a manner that would minimize the possibility of the account number being compromised.” The report warned:
An individual able to obtain a membership number and a member name has adequate information to engage in a confidence scheme. The most likely scenario would be one where an individual would attempt to obtain a duplicate card on the compromised account. The subject could then use a previously available credit line or attempt to open a new credit line on a member[’]s account.
(Emphasis added). To counter this significant risk, the report recommended “obscuring]” all membership numbers—not simply those duplicated in credit card numbers—“on both sales and refund receipts.”
Yet, as the shoppers discovered several years later when they made purchases using their membership/credit cards at two different Sam’s Club stores, Sam’s Club ignored these internal warnings. Instead, both shoppers received receipts listing their names and membership numbers (i.e.,. all eleven unique digits of their credit numbers)-—-precisely the information required, according to Sam’s Club’s internal security unit, to “use a previously available credit line or attempt to open a new [one].”
In late October 2008, one week after the shoppers commenced this case, a WalMart employee sent an e-mail to senior point-of-sale personnel with the subject “We got trouble, right here in Member City,” warning of a “terrific and terrible emergency.” (Emphasis added). The e-mail explained that using the member number to generate the card number was “not good [because] there’s now a federal law stating that we can only print the last four [sic] digits of any account number on the receipt.” (Emphasis added). Printing too many digits, the e-mail said, resulted in “a dangerous situation.” As a remedy, the email recommended “reissuing the [membership/credit] cards with a random non-derived account number ... immediately, *513 if not sooner,” because “we do not consider these cards secure until this is completed.” (Emphasis added). Of course, Sam’s Club cannot be faulted for failing to achieve the impossible task of acting sooner than immediately, but the retailer deliberately waited more than three months to improve security, continuing to print each unique digit required for identity theft out of a desire to avoid disrupting profitable holiday sales.
Based on this evidence, a reasonable jury could easily find Sam’s Club acted in “reckless disregard of statutory duty,” Safeco, 551 U.S. at 57, 127 S.Ct. 2201, running “ ‘an unjustifiably high risk of harm that [was] either known or so obvious that it should [have] be[en] known,’ ” id. at 68, 127 S.Ct. 2201 (quoting Farmer v. Brennan, 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).
III. CONCLUSION
Mindful of the judiciary’s limited role under Article III, I cannot join the majority’s unnecessary resolution of a difficult constitutional question. Relying on Do-well, I would vacate the district court’s judgment and remand with instructions to dismiss for lack of Article III standing. If it were necessary to reach the merits, I would reverse the judgment because (if the shoppers have standing) this case presents a jury question.[17]

. In Massachusetts v. EPA, 549 U.S. 497, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007), for example, the Supreme Court conspicuously relied on the harm Massachusetts was in fact suffering, not on the bare statutory violation of which Massachusetts complained, as the basis for finding an injury in fact: "Because the Commonwealth owns a substantial portion of the state’s coastal property" and "rising seas have already begun to swallow Massachusetts’ coastal land,” "[Massachusetts] has alleged a particularized injury in its capacity as a landowner.” Id. at 522, 127 S.Ct. 1438 (internal quotation omitted).

. In Raines v. Byrd, 521 U.S. 811, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997), for example, the Supreme Court explained:
”[T]he law of Art. Ill standing is built on a single basic idea—the idea of separation of powers.” In the light of this overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere, we must put aside the natural urge to proceed directly to the merits of this important dispute and to “settle” it for the sake of convenience and efficiency. Instead, we must carefully inquire as to whether appellees have met their burden of establishing that their claimed injury is personal, particularized, concrete, and otherwise judicially cognizable.
Id. at 820, 117 S.Ct. 2312 (footnote omitted) (quoting Allen v. Wright, 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)).

. Despite the majority’s citation, ante at 498, of Charvat v. Mut. First Fed. Credit Union, 725 F.3d 819, 822 (8th Cir.2013), that case neither decided the question nor supports the majority’s answer. In Charvat, our court did no more than follow the settled principle that a factual "informational injury” constitutes injury in fact pursuant to a statute providing redress for this real harm. Id. at 823; see, e.g., Akins, 524 U.S. at 21, 118 S.Ct. 1777. Dryden v. Lou Budke’s Arrow Fin. Co., 630 F.2d 641 (8th Cir.1980), is a similar informational injury case involving a defendant who actually harmed the plaintiff by providing incorrect or incomplete information. See id. at 643-44, 647. Contradicting the majority’s standing analysis, Charvat recognized, "Because injury in fact is a constitutional requirement, Congress may not grant standing to an individual who would not otherwise have standing.” Charvat, 725 F.3d at 822 (emphasis added).

. "The canon is not a method of adjudicating constitutional questions by other means,” Clark v. Martinez, 543 U.S. 371, 381, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005), so Wallace does not preclude the majority from answering this constitutional question today (although Wallace 's logic counsels against doing so). By the same token, however, the majority's constitutional ruling today cannot affect our court’s statutory interpretation in Wallace, 747 F.3d at 1032. See Clark, 543 U.S. at 382, 125 S.Ct. 716 (refusing to "render every statute a chameleon, its meaning subject to change depending on the presence or absence of constitutional concerns in each individual case”); see also Mader v. United States, 654 F.3d 794, 800 (8th Cir.2011) (en banc) (stat *507 ing we are bound by the decisions of prior panels).

.The Supreme Court seems to have discovered at argument that the case turned on a factual dispute about whether a particular harm was an injury in fact, rather than on the legal question whether Congress could create an injury in fact without actual harm. Chief Justice Roberts said at argument, "[I]f you tell me what this case is about is whether or not you’ve shown injury in fact, it's not a ... significant case, and your client has to prove that at trial.” Oral Argument at 34:02, First Am., 567 U.S. at -, 132 S.Ct. at 2537 (No. 10-708), available at http://www.oyez.org/ cases/2010-2019/2011/2011_10_708.

. As then-Judge Scalia put it, "[T]he law of standing roughly restricts courts to their traditional undemocratic role of protecting individuals and minorities against impositions of the majority, and excludes them from the even more undemocratic role of prescribing how the other two branches should function in order to serve the interest of the majority itself.” Antonin Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U.L.Rev. 881, 894 (1983).

. Under the majority’s theory, the shoppers have standing solely because “Congress gave consumers the legal right to obtain a receipt at the point of sale showing no more than the *508 last five digits of the consumer's credit or debit card number.” Ante at 498. This theory lacks any internal limiting principle, reducing Article III standing to a nullity.

. The majority’s reliance on Robins v. Spokeo, Inc., 742 F.3d 409, 412-13 (9th Cir.2014), see ante at 500, is misplaced because Robins did not present the Ninth Circuit with a difficult constitutional question that could be avoided by adopting an alternative reading of *509 § 1681n(a)(l)(A). Whether a bare statutory violation gives rise to an injury in fact was not an open question for the Ninth Circuit. See Edwards v. First Am. Corp., 610 F.3d 514, 517 (9th Cir.2010). But it is an open question for our circuit in this case, and "the hallowed rules of constitutional avoidance” preclude us from answering this difficult question without necessity. Union Pacific, 738 F.3d at 900; see also, e.g., Clark, 543 U.S. at 381, 125 S.Ct. 716.
Equally misplaced is the majority’s reliance on the fact that other circuits—without expressly considering constitutional standing— have "permitted [plaintiffs] to recover statutory damages under [§ 1681n(a)(l)(A) ] in the absence of actual damages.” Ante at 501 n. 4. Because constitutional standing "was not argued or decided in these cases, ... it is axiomatic that they provide absolutely no support for the” majority's "position.” United States v. Bruguier, 735 F.3d 754, 763 (8th Cir.2013) (en banc). " 'Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.' ” Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157, 170, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004) (quoting Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925)). And even if these other cases did constitute precedent on the constitutional standing issue, which they do not, our court would remain independently bound to follow the Supreme Court and avoid offering unnecessary answers to difficult constitutional questions.

. Though the Supreme Court in Bennett focused on prudential standing, see 520 U.S. at 163, 117 S.Ct. 1154, Article III places even clearer limits on Congress’ ability to create civil remedies, see, e.g., Ass’n of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 154, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

. My analysis of Article III standing and constitutional avoidance leads me to dissent rather than concur in the judgment. Unlike the majority, which affirms the district court’s grant of summary judgment under Rule 56(a) and prejudicial entry of judgment in favor of Sam’s Club, I would vacate the district court’s rulings and remand with instructions to dismiss the case without prejudice. This procedure is the appropriate course when a district court enters judgment in a case in which it lacks jurisdiction. See, e.g., Burton v. Stewart, 549 U.S. 147, 149, 127 S.Ct. 793, 166 L.Ed.2d 628 (2007) (per curiam); Rosebud Sioux Tribe v. McDivitt, 286 F.3d 1031, 1035 (8th Cir.2002).

. The majority today turns Safeco on its head by giving Sam’s Club the benefit of missing authoritative guidance even though the statutory text is not "less-than-pellucid,” Safeco, 551 U.S. at 70, 127 S.Ct. 2201. See ante at 501-02. Here, the absence of guid-anee supporting the stores’ reading should cut the other way because it means Sam’s Club’s reading has no foundation in the unambiguous statutory text or in any extrastatutory guidance.

. I agree the district court did not abuse its discretion by denying the shoppers’ motion to recuse.